105 Wn.2d 606 (1986)
717 P.2d 1353
In the Matter of GORDON ROSIER.
SNOHOMISH COUNTY, ET AL, Appellants,
v.
PUBLIC UTILITY DISTRICT NO. 1 OF SNOHOMISH COUNTY, Respondent.
Nos. 50589-6, 50728-7.
The Supreme Court of Washington, En Banc.
April 10, 1986.
Bricklin & Gendler and Michael W. Gendler, for appellant Rosier.
Seth R. Dawson, Prosecuting Attorney, John T. Dalton and Gordon W. Sivley, Deputies; Bruce Jones, City Attorney, and Grant Weed, Assistant, for appellants Snohomish County and City of Everett.
Williams, Novack & Hansen, Douglas F. Graham, and David R. Riley, for respondent.
Michael J. Killeen on behalf of Allied Daily Newspapers, Washington Newspaper Publishers Association, and Society of Professional Journalists, amicus curiae for appellant.
PEARSON, J.
The Superior Court for Snohomish County entered orders prohibiting the disclosure of information contained in the records of Public Utility District No. 1 of *608 Snohomish County, thereby raising issues with respect to the breadth of this State's public disclosure act, RCW 42.17. The orders were entered in two cases which are consolidated here on appeal.
In the first case, Gordon Rosier, a political opponent of members of the District's board of commissioners, requested the names and addresses of the District's approximately 156,000 customers. He intended to send political mailings to the customers in connection with an upcoming District commissioner election. The District thereupon filed an action in the superior court and brought Mr. Rosier into court by show cause order. Based on affidavits filed in that case, the trial court enjoined the District from disclosing its customers' names and addresses to Mr. Rosier. A principal factual reason underlying the court's injunction was
a very real prospect that such disclosures could have life threatening implications for a substantial number of citizens in the community such as law enforcement officials and victims of domestic abuse, who have legitimate reasons for wanting to maintain their anonymity.
The second case arose as a consequence of the first. The District historically had given Snohomish County officials the names, addresses and electrical usage of particular customers when requested by such officials for purposes related to their official duties and responsibilities. Following entry of the injunction in the Rosier case, however, the District informed these officials that the District would no longer provide them with such information.
An action thereupon was commenced by Snohomish County, its sheriff, treasurer and assessor, and also by the City of Everett and its chief of police (herein public officials). The District was brought into court by a show cause order. The trial court also decided this case based upon affidavits filed by the parties. For reasons similar to those in the first case, the Superior Court again ruled in favor of the District and ordered the District to not release the information in question to the public officials.
Both Mr. Rosier and the public officials appealed. We *609 granted direct review. The consolidated appeals raise one principal issue: Does RCW 42.17 require disclosure of the information requested of the District or is that information subject to any personal privacy interest?
We hold that the public disclosure act requires the District to provide the information requested, and that the trial court erred in entering orders prohibiting disclosure. In so holding, however, we recognize that the act provides a general exemption for personal privacy. Furthermore, we recognize that a privacy interest might exist in lists of names and addresses, depending upon the context in which the lists are requested. Under the rule set forth below, the court recognizes a privacy interest in any information released by an agency which is matched specifically to a particular individual's name, and which reveals a unique fact about that individual. Under this rule, the personal privacy interest in that information must then be weighed against the public interest in disclosure to determine whether that data must be exempted from disclosure.

I
[1, 2] A necessary threshold question in this case is whether the public disclosure law provides a general personal privacy exemption when disclosure of the pertinent records would involve an unreasonable invasion of privacy. We hold that RCW 42.17 clearly provides such an exemption. This conclusion is consistent with the overall statutory scheme and language of RCW 42.17.
This court has declared that RCW 42.17 mandates broad disclosure of public records and must be construed liberally by the courts. The burden of proof rests on the agency to prove that it does not have the duty to disclose. Review of an agency's refusal to disclose a public record is de novo. Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). Nonetheless, the statute does not mandate unconditional disclosure. The statute indicates in various sections that the personal privacy interests of individuals must be *610 considered and accommodated by exemption from public disclosure.
First, in its declaration of policy section, RCW 42.17.010(11), the statute specifically recognizes individual privacy interests as a factor the releasing agency must consider. Further, RCW 42.17.310(1) specifically exempts certain records from disclosure. These specified exemptions are designed to protect individual privacy or important governmental interests. The records included in these exemptions are those which are particularly sensitive and would most likely involve a privacy interest, e.g., welfare rolls, prisoner files, employment files, and other obviously private information. These enumerated exemptions, however, are not absolute; if an agency can delete the information which would violate an individual's privacy, then the agency must disclose the exempted records. RCW 42.17.310(2). This statutory scheme suggests that the Legislature believes privacy interests are the only interests sufficiently important to block disclosure of such records.
RCW 42.17.310(2) also distinguishes between "statistical information not descriptive of any readily identifiable person" and information which does describe identifiable persons. The statute then requires disclosure only of that information which does not readily identify a particular person. This provision suggests that information which specifically identifies a particular person must receive special consideration and may not be disclosed in every case.
The statute also requires the releasing agency to delete identifying information which would result in an unreasonable invasion of personal privacy before disclosing any public record.
Each agency ... shall make available for public inspection and copying all public records. To the extent required to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available ... any public record ...
(Italics ours.) RCW 42.17.260(1). The Legislature superimposed this section over the exemptions provided for particularly *611 sensitive information found in RCW 42.17.310(1). Thus, the statute ensures that agencies consider and protect personal privacy in every request for information, not merely in requests for specified highly sensitive information.
Finally, the basic purpose of the public disclosure act is to provide a mechanism by which the public can be assured that its public officials are honest and impartial in the conduct of their public offices. See RCW 42.17.010(1)-(6), (10) and (11). As a practical matter, most courts hold that the release of information under such public disclosure acts is not conditioned specifically upon the use to which the information will be put. See Environmental Protec. Agency v. Mink, 410 U.S. 73, 35 L.Ed.2d 119, 93 S.Ct. 827 (1973); Cooper v. Department of the Navy, 558 F.2d 274 (5th Cir.1977).
Nonetheless, in determining whether the act should exempt particular information from disclosure for privacy protection, this court acknowledges that the basic purpose and policy of RCW 42.17 is to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation. Because the purpose and policy of our law does not include scrutiny of private individuals, the general personal privacy exemption we find inherent in the act comports with the expressed purposes and policies of the act. In short, we are satisfied that the act supports the general privacy exemption urged by the District.

II
Generally courts have held that disclosure of lists of names and addresses does not involve a privacy interest. See Annot., Publication of Address as Well as Name of Person as Invasion of Privacy, 84 A.L.R.3d 1159 (1978); Annot., What Constitutes Personal Matters Exempt From Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act, 26 A.L.R.4th 666 (1983). This *612 court agrees that such is the case in most instances.
[3, 4] In some instances, however, the very fact that a person's name appears on a particular list identifies that individual with a particular classification of individuals. Identification as a member of that group may have social implications. In these special cases, the release of names and addresses actually becomes the release of names, addresses, and an additional piece of information. Disclosure of this additional information may constitute an unreasonable invasion of privacy if it identifies particular, identifiable persons as somehow unique from most of society.
Accordingly, we believe that whenever someone requests a list of names and addresses, the releasing agency must examine the context in which those names and addresses are found. If the release of the names and addresses also reveals that those named are members of a particular classification of persons, and membership in that group has social implications, then a personal privacy interest inheres in the data. The releasing agency must then analyze the propriety of disclosure as though the requesting party had requested specific information matched to a particular person's name. In so doing, the releasing agency must weigh the privacy interest against the public interest in disclosure to determine whether the act exempts the information from disclosure.[1]
Applying this analysis to the list of names and addresses requested by Mr. Rosier, we first identify the specific context in which these names are found. The context is that of public utility customers who use electricity in their homes. Accordingly, the additional data revealed about those on the list does not place the named persons into an identifiable classification with inherent social implications. *613 Because the information in no way singles out any particular person as being unique from most of society, in this context we hold that no privacy interest attaches to the list of names and addresses. Therefore, the trial court erred in failing to order the District to disclose it.

III
The rule we promulgate recognizes that a privacy interest exists when an agency releases information specifically identified to a particular individual's name. As shown above, an agency might reveal that information inadvertently, as when a list of names and addresses also reveals further information about each individual on the list merely because those persons' names appear on that particular list. On the other hand, a request for disclosure might come in the form of a request for specific information about a particular named person, as when the police request electrical usage data on a named individual.
The rule announced in this case refines somewhat the rule enunciated in Hearst Corp. v. Hoppe, 90 Wn.2d 123, 580 P.2d 246 (1978). In Hearst, this court held that a privacy interest exists in information if its release would be highly offensive to a reasonable person and of no legitimate concern to the public. Hearst, at 135-36. Under the rule announced in this case, however, the information sought need not be highly offensive in order to establish a privacy interest. Rather, we believe the better rule recognizes that an individual has a privacy interest whenever information which reveals unique facts about those named is linked to an identifiable individual.
Under this rule, we incorporate Hearst's "highly offensive" test into the second part of the Hearst balancing test under which an agency must determine whether an individual's privacy interest outweighs the public's interest in broad disclosure. Whenever the information in which an individual has a privacy interest is not "highly offensive", the public interest in disclosure outweighs the individual's *614 privacy interest. On the other hand, if the release of the information is highly offensive, the private interest may outweigh the public interest.
Thus, the test announced in this case complements the analysis begun in Hearst. There, the information requested was matched specifically to particular named individuals. The court determined that the information sought was not highly offensive and ended its analysis at that point. Conversely, under our new analysis, a privacy interest would attach to this information because it reveals unique facts about those named. Attention then would shift to the second step of the Hearst analysis under which the court must balance the public and private interests.
Under this analysis, we would reach the same result reached by the court in Hearst. The public interest in that case clearly outweighed the personal privacy interest of the individuals involved. The data sought related only to the value and assessment of parcels of property. The data was not sought for use against the identified individuals, but rather for determining whether the county assessor was acting contrary to the public interest by granting favors to his campaign contributors. The data was not highly offensive as it related to the individuals involved, yet it would be of great value to the public.

IV
[5] Applying the rule announced today to the request for disclosure of electrical usage records of a particular person, we recognize the inherent privacy interest in this data; it is information specifically matched to a person's name which reveals unique facts about that person, i.e., suspiciously high power usage. We must then balance the identified privacy interest against the public interest in release of this data. See Hearst Corp. v. Hoppe, supra.
Although an agency generally may not inquire into the purpose for which the information is sought, see Hearst, at 137, we believe an exception is warranted in cases such as this, when law enforcement officials seek specific data *615 matched to a particular person's name. In this context, we hold that the police must have an articulable suspicion of illegal conduct by that individual to justify the disclosure of the private information. The public has a significant interest in disclosure of information leading to arrest for illegal conduct; but the public in general, as well as any particular individual, has a privacy interest in preventing general "fishing expeditions" by governmental authorities. Even if the information sought is not highly offensive when viewed in the abstract, its disclosure in the context of a general review of an individual's power usage records is highly offensive. Thus, we believe the governmental authorities should articulate a specific suspicion of particular illegal conduct, rather than a mere "reason" for the request, whenever they seek disclosure of particular information matched to a specific individual.
In the present case, the privacy interest in the power usage records is minimal; the information is fairly innocuous and reasonable persons would not be highly offended by its release. We admit that its release to police officers would "highly offend" anyone who engages in illegal activity, e.g., growing marijuana; but this person is not the appropriate measure of a "reasonable person". If the police have an articulable suspicion of illegal acts, the release of the records leads to effective law enforcement, thereby furthering the public interest. Accordingly, the electrical usage information should be released in this case.
We recognize the possibility that the police may falsely claim that a secret informant exists, and that the informant gave the police sufficient information about a particular person to raise an "articulable suspicion" of illegal acts. The individual's remedy for such police misconduct was articulated by this court in State v. Casal, 103 Wn.2d 812, 699 P.2d 1234 (1985). A defendant may challenge the existence of a secret informant or the truthfulness of the police officer's affidavit in support of the search warrant through an in camera hearing under certain circumstances. Thus, the articulable suspicion test adequately protects against *616 general "fishing expeditions" not based on any articulable suspicion.

V
The remaining issues raised in this appeal do not merit prolonged discussion.
[6] Only one of the eight appellate briefs filed in these cases refers to the privacy section of our state constitution, Const. art. 1, § 7. As far as the record before us reflects, the parties neither raised nor discussed this issue at the trial court level in either case. As expressed by the Eighth Circuit, "naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir.1970). See also Null v. Grandview, 669 S.W.2d 78, 81 (Mo. Ct. App. 1984); State v. Perbix, 349 N.W.2d 403, 404 (N.D. 1984). The constitutional argument made in the cases before us does not merit our consideration, and we therefore decline to consider it.
[7] We reject the District's argument that we are bound by the findings of fact entered by the trial court in these cases. The record of the proceeding below consists entirely of written and graphic material and contains no trial court assessment of witnesses' credibility or competency. Because the record on appeal is identical to that considered by the trial court, we are not bound by the trial court's findings of fact. Smith v. Skagit Cy., 75 Wn.2d 715, 718-19, 453 P.2d 832 (1969); Eiden v. Snohomish Cy. Civil Serv. Comm'n, 13 Wn. App. 32, 37, 533 P.2d 426 (1975).
Nor do we find support for Mr. Rosier's arguments that the language of the show cause order citing him into court improperly shifted the burden of proof on the disclosure issue to him. The agency bears the burden of proving that it does not have the duty to disclose. Hearst Corp. v. Hoppe, 90 Wn.2d 123, 580 P.2d 246 (1978). Mr. Rosier clearly raised the burden of proof issue in both his responsive pleading and trial brief. Nothing in the record suggests that the trial court did not consider that the District had *617 the burden of proof on the disclosure issue.
As to attorney fees and penalties, the public disclosure act provides:
Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed twenty-five dollars for each day that he was denied the right to inspect or copy said public record.
RCW 42.17.340(3).
Pursuant to the foregoing statute, Mr. Rosier and the public officials sought attorney fees and costs in the trial court. Because they have prevailed on appeal, on remand the trial court should award them their reasonable attorney fees and costs previously incurred in the trial court. On appeal, only Mr. Rosier complied with RAP 18.1. Based on his showing to this court, we hereby award Mr. Rosier $5,000 as reasonable attorney fees on appeal in addition to taxable costs.
Mr. Rosier and the public officials ask for the maximum $25 per day penalty, which also is authorized by the foregoing statute. The District initiated the action against Mr. Rosier in order to obtain judicial guidance with respect to its duty to disclose. It claimed, and it is a claim which does not appear unreasonable from the record, that it faced litigation whether it granted Mr. Rosier's request or denied it. Furthermore, after the trial court decision in the Rosier case the District clearly did not act unreasonably by denying the public officials' requests, thus triggering the action brought by the public officials. In both cases, the trial court rather than the District decided that the District should not disclose the records sought. Under these circumstances, a penalty is not warranted. See Hearst, at 139-40. We exercise our discretion in the matter by denying Mr. Rosier and the public officials any penalty payments in connection with either the trial or appellate proceedings.
*618 We reverse and remand with directions to enter disclosure orders in conformity with this opinion.
DOLLIVER, C.J., and UTTER, BRACHTENBACH, CALLOW, and GOODLOE, JJ., concur. ANDERSEN, J. (dissenting in part, concurring in part)
I dissent from the majority opinion which holds that the state freedom of information act[2] "provides a general personal privacy exemption". Until today, the act had no such provision in it. Through some incomprehensible alchemy, the majority somehow transforms this state's "freedom of information act" into a "government censorship of public records act". By writing this extremely broad overall exemption into the act, the majority enables every public agency and employee thereof to henceforth censor the public's access to public records, all in the fair name of "personal privacy". This eviscerates the state's freedom of information act and moves the freedom of information cause one giant step backward.
The changes wrought by the majority opinion in existing public disclosure law and practice may tend to be obscured by the fact that access to the public records here in question is not denied outright by the majority (though this may occur on remand). These changes, however, are profound and require this dissent to go into the matter in sufficient detail so that the effects of the majority opinion become readily apparent.
What the majority is tampering with here is a direct enactment of the people. In 1972, the people of this state exercised their direct legislative power by adopting Initiative 276, now codified as the public disclosure act.[3] That act mandated a broad range of disclosure in four areas of government, namely: campaign financing; lobbyist reporting; reporting of elected officials' financial affairs; and public *619 records. The case before us involves the latter category, disclosure of public records. This part of Initiative 276 is presently codified as RCW 42.17.250-.340 and is commonly referred to as the "state freedom of information act". It is so referred to because it was modeled after the federal Freedom of Information Act (FOIA).[4] Though the two enactments are in many respects similar to each other, there are also some basic differences between them  particularly in the statutory exemptions to disclosure.
One of the most notable aspects of Initiative 276 was the extraordinarily broad range of citizen support that achieved its enactment after legislative supporters were unsuccessful in passing comparable legislation in 1971.[5] As this court itself expressed it at the time the constitutionality of Initiative 276 was upheld, "[i]t is certainly not the function or prerogative of the courts to second guess and substitute their judgment at every turn of the road for the judgment of legislators in matters of legislation. So it is, or should be, in the case of direct legislation by the people via the initiative process."[6] Yet that is precisely what the majority does with respect to the disclosure of public records section of Initiative 276. In touching upon what made Initiative 276 a matter of such critical importance to the state, this court in Fritz v. Gorton, 83 Wn.2d 275, 517 P.2d 911, appeal dismissed, *620 417 U.S. 902, 41 L.Ed.2d 208, 94 S.Ct. 2596 (1974) held as follows:
We accept as self-evident the suggestion in the brief of intervenors (The League of Women Voters) that the right to receive information is the fundamental counterpart of the right of free speech.
(Italics mine.) Fritz, at 296.
The declaration of policy provision of Initiative 276 is emphatic in this regard:

The provisions of this chapter shall be liberally construed to promote ... full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected.
(Italics mine.) RCW 42.17.010(11) (part). Further,
[t]he provisions of this act are to be liberally construed to effectuate the policies and purposes of this act.
(Italics mine.) RCW 42.17.920 (part).
The access provisions of the state freedom of information act mandate that "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying all public records." (Italics mine.) RCW 42.17.260(1) (part). Further, "[p]ublic records shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person." (Italics mine.) RCW 42.17.270 (part).
And if the foregoing were not already clear enough, this court in a unanimous opinion has directly held that the public disclosure act is a strongly worded mandate for broad public disclosure of public records, is to be liberally construed to promote full access to public records and the burden of proof is on the agency to prove it does not have the duty to disclose.[7]
Of course this state's public policy is also "mindful of the right of individuals to privacy", RCW 42.17.010(11) (part), *621 but not in the sense of providing any broad, overall privacy exemption such as the majority now purports to discover. The act does not bear the tortured reading the majority now gives it. But to fully understand this, it is first necessary to review the manner in which the act, as written, deals with protecting privacy rights.
The state freedom of information act provides specific statutory exemptions from disclosure for those particular categories of public records most capable of causing substantial damage to the privacy rights of citizens or damage to vital functions of government if they are disclosed. These statutory exemptions were carefully drawn and have subsequently been changed and added to by the Legislature as it deemed necessary.
In referring to what an agency is to do before releasing public records, the majority opinion uses terms such as "analyzing", "weighing" and "balancing". As I read the act, it is the people themselves who did the necessary analyzing, weighing and balancing at the time they adopted Initiative 276 (and as the Legislature also did when it amended the act). What resulted was the following list of statutory exemptions from disclosure:
Certain personal and other records exempt. (1) The following are exempt from public inspection and copying:
(a) Personal information in any files maintained for students in public schools, patients or clients of public institutions or public health agencies, welfare recipients, prisoners, probationers, or parolees.
(b) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.
(c) Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would (i) be prohibited to such persons by RCW 82.32.330 or (ii) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer.
(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, *622 and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
(e) Information revealing the identity of persons who file complaints with investigative, law enforcement, or penology agencies, other than the public disclosure commission, if disclosure would endanger any person's life, physical safety, or property: Provided, That if at the time the complaint is filed the complainant indicates a desire for disclosure or nondisclosure, such desire shall govern: Provided, further, That all complaints filed with the public disclosure commission about any elected official or candidate for public office must be made in writing and signed by the complainant under oath.
(f) Test questions, scoring keys, and other examination data used to administer a license, employment, or academic examination.
(g) Except as provided by chapter 8.26 RCW, the contents of real estate appraisals, made for or by any agency relative to the acquisition or sale of property, until the project or prospective sale is abandoned or until such time as all of the property has been acquired or the property to which the sale appraisal relates is sold, but in no event shall disclosure be denied for more than three years after the appraisal.
(h) Valuable formulae, designs, drawings, and research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss.
(i) Preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed or policies formulated or recommended except that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action.
(j) Records which are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts.
(k) Records, maps, or other information identifying the location of archaeological sites in order to avoid the looting or depredation of such sites.
(l) Any library record, the primary purpose of which is *623 to maintain control of library materials, or to gain access to information, which discloses or could be used to disclose the identity of a library user.
(m) Financial information supplied by or on behalf of a person, firm, or corporation for the purpose of qualifying to submit a bid or proposal for (a) a ferry system construction or repair contract as required by RCW 47.60.680 through 47.60.750 or (b) highway construction or improvement as required by RCW 47.28.070.
(n) Railroad company contracts filed with the utilities and transportation commission under RCW 81.34.070, except that the summaries of the contracts are open to public inspection and copying as otherwise provided by this chapter.
RCW 42.17.310(1).[8]
This court in Hearst Corp. v. Hoppe, 90 Wn.2d 123, 130, 580 P.2d 246 (1978) could not have been more clear when it held:
The statutory scheme establishes a positive duty to disclose public records unless they fall within the specific exemptions.
(Italics mine.) I do not see how the act itself or Hearst could be clearer  public records must be disclosed unless they come within one of the statutory exemptions. There is simply no "general personal privacy exemption" in the act, the reasoning in the majority opinion to the contrary notwithstanding.
These statutory exemptions allow, but do not absolutely compel, an agency to withhold records in certain cases; further, *624 if only a portion of a public record is covered by an exemption, the agency is required to disclose the remaining separable portions of the record. These principles are explained in two sections of the statute just following the above quoted section listing the statutory exemptions:

Except for information described in subsection (1)(c)(i) of this section and confidential income data exempted from public inspection pursuant to RCW 84.40.020, the exemptions of this section are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought. No exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons.
(Italics mine.) RCW 42.17.310(2).
Agency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld.
(Italics mine.) RCW 42.17.310(4).
In view of the foregoing, how, under the state freedom of information act, should an agency respond to a request for access to public records when all or a part of the requested records are within one of the above statutory exemptions from disclosure? The answer is this: the agency should respond as RCW 42.17.310(2) and (4) (quoted just above) dictate. The agency deletes those portions of the requested records which in the agency's best judgment would unreasonably violate someone's personal privacy rights[9] or damage some vital governmental interest.[10] The agency then turns the remaining records over to the requestor of the documents, along with a statement explaining the particular exemption under which the agency made the deletion and containing a brief explanation of how that exemption *625 applied to the portion of the record withheld.[11]
This manner of proceeding is again specifically authorized and dealt with in a preliminary provision of the state freedom of information act, which explains the mechanics the agency is to use in disclosing public documents and indexes. That provision reads:
Documents and indexes to be made public. (1) Each agency, in accordance with published rules, shall make available for public inspection and copying all public records. To the extent required to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing.
(Italics mine.) RCW 42.17.260(1). It is the italicized language in this statute which the majority removes from context and then claims as the basis for its broad, overall personal privacy exemption to all disclosures under the act. This statute does not so provide at all; it is no more than a preliminary clause in a statute specifying what agency records must be made available to one requesting disclosure. This particular section of the statute merely explains to the agency the procedure to use in disclosing documents contained within the specific statutory exemptions which exempt matters that might violate someone's personal privacy rights. The substantive law as to what records are exempt is that contained in the exemption statute. See RCW 42.17.310(1), (2) and (4) set out above.[12]
The basic flaw in the majority's reasoning is that it tries to read a personal privacy exception into the state freedom of information act where none exists. The federal Freedom *626 of Information Act does contain such a specific statutory exception. It exempts from disclosure all
personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
(Italics mine.) 5 U.S.C. § 552(b)(6). See Kronman, The Privacy Exemption to the Freedom of Information Act, 9 J. Legal Stud. 727 (1980). One searches our state exemption statutes[13] in vain, however, for any such broad, overall personal privacy exemption; it is just not there. The majority opinion, not feeling constrained by that, simply writes such an exemption into our state freedom of information act. Since the drafter of our state act closely patterned it after the federal act, he or she cannot be assumed to have inadvertently left this provision out of the state act but, to the contrary, must be presumed to have intentionally left it out. It is fundamental that courts are not able to read into statutes things which are not there,[14] yet that is precisely what the majority does.
To return, then, to the manner in which the state freedom of information act as written deals with protecting privacy rights. If the requestor of public documents is unwilling to accept agency edited records, or the agency's refusal to provide any records, then what? Then the requestor may seek judicial intervention and ask the superior court to order the agency to produce the documents in full. The three principal sections of the state freedom of information act which authorize such judicial intervention, are the following:
Inspection or copying of any specific records exempt under the provisions of this section may be permitted if the superior court in the county in which the record is maintained finds, after a hearing with notice thereof to every person in interest and the agency, that the exemption of such records is clearly unnecessary to protect any *627 individual's right of privacy or any vital governmental function.
RCW 42.17.310(3).
Court protection of public records. The examination of any specific public record may be enjoined if, upon motion and affidavit, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.
RCW 42.17.330.
Judicial review of agency actions. (1) Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is required.
(2) Judicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo. Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts may examine any record in camera in any proceeding brought under this section.
RCW 42.17.340(1), (2).
It will be noted from the last of the three judicial intervention statutes just quoted that the policy of the act is there again underscored, "that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." (Italics mine.)[15] This declaration of policy is totally incompatible with the majority's sudden discovery of a general personal privacy exemption applicable to all public records. Significantly, as *628 another of these three judicial intervention statutes also provides, the court may permit inspection and copying of a public record if the court finds that the statutory exemption[16] "is clearly unnecessary to protect any individual's right of privacy or any vital governmental function."[17]
"Language within a statute must be read in context with the entire statute and construed in a manner consistent with the general purposes of the statute."[18] The construction of the state freedom of information act, which I have set forth above, fully comports with this principle; the construction offered by the majority does not.
The construction set forth in this dissent also comports with this court's approach to the state freedom of information act in Hearst Corp. v. Hoppe, 90 Wn.2d 123, 580 P.2d 246 (1978) and, again, the majority's construction does not. Hearst did not deal with any broad overall "personal privacy exemption" hovering protectively over the release of all public records as the majority holds herein, but dealt with a statutory exemption that specifically protected a taxpayer's "right to privacy". That exemption is listed above along with the rest of the statutory exemptions from disclosure listed in RCW 42.17.310(1) set forth in full above, but for emphasis I will set it out again:
Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would (i) be prohibited to such persons by RCW 82.32.330 or (ii) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer.
(Italics mine.) RCW 42.17.310(1)(c). The entire discussion of the right of privacy in Hearst, and the definition thereof, *629 was in the context of this particular exemption. Hearst, at 134-38. As I have discussed above, the assessor thus had the right under this particular statutory exemption to delete those parts of the assessment records which would have unreasonably violated a taxpayer's right to privacy, but instead elected to not release any of the assessment records to the requestor. Pursuant to the judicial intervention statutes, also quoted above, the requestor took the matter to court. Following a hearing thereon, the superior court judge conducting the hearing made certain deletions from those records and then ordered the balance of the records released. The assessment records in question, showing the trial court's deletions, are contained in the appendix to this court's Hearst opinion at 140-43. On appeal, this court upheld the superior court judge's ruling. The vice of the majority opinion herein, however, is to declare a personal privacy right as to all public records, not just to those contained in certain statutory exemptions such as the assessor's records before the court in Hearst.
One additional point must be made concerning Hearst. In connection with the "right to privacy" exemption contained in the above quoted assessment records exemption, this court noted that the term was not defined in the statute and adopted the Restatement (Second) of Torts § 652D (1977) definition, i.e., whether the public record sought "(a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public.'" Hearst, at 135-36. The majority in this case now also departs from that test and waters it down in the course of what it terms "refining" it. See majority, at 613. Since this definitional change serves only to further weaken the act, and for the reasons comprehensively discussed in Hearst, I would continue to adhere to the strict "right to privacy" standard adopted by this court in Hearst.
Yet other serious practical problems remain with regard to the new rule now adopted by the majority. Disclosure of any public record could support an argument that *630 someone's privacy rights are violated thereby. Applying the majority's new "general personal privacy exemption" to all public records makes every employee of a public agency a 1-person censor of what public records will or will not be released. This warps the state freedom of information act 180 degrees off course, and renders it not a mere nullity, but worse, a statutory vehicle to suppress access to public records.
Since most people have neither the time nor the means to litigate such matters, a bureaucratic refusal of access to public records will in most cases be the end of the quest. The reality of this problem was forcefully addressed in a recent article in the State Bar News by the editor of the Spokane Chronicle and the Spokesman Review. It merits serious consideration. The editor, Curt Pierson, wrote:
The fact remains, however, that any editor worth his salt realizes that time with attorneys and in court is a necessary part of the job these days. Because if we don't oppose assaults on press freedom, access, the public's right to know, and a number of other causes we hold dear, then who will?
We editors stand to lose a lot if we do not stand up and fight. But the public stands to lose even more. It is not always easy, however, to persuade that public that we are really fighting on its behalf.
Spokane's newspapers had to go to court recently to get access to death certificates. What we wanted, specifically, were the certificates of premature babies who had died reportedly after having received a Vitamin E supplement which was subsequently recalled by the Federal Food and Drug Administration.
Officials denied us access to the certificates, first on privacy grounds, later contending that the staff lacked the time which would be required to get us the information we sought. We had been as specific as we could be in our request. We sought the certificates only of those babies under three months of age which had died at a specific hospital during four specific months. Still, we were told it would be far too time-consuming to dig out that information. So we had to go to court.
This was not an action so easily explained to the public. *631 To many, it appeared that the newspapers were seeking the certificates so that they could harass the parents of the dead babies. That was not our intention.
We wanted, first, to establish once and for all that vital statistics  birth, death and marriage records  were public documents. It had never occurred to us that they were not, and now we had the opportunity to establish a precedent of substance.
Second, we wanted information that was available only through viewing the death certificates, including the causes of death as stated by the coroner, the ages of the babies, and the identities of the attending physicians.
We got that information. And we paved the way for others to get similar information in the future.
Pierson, The Media Point of View, Wash. State Bar News 17-18 (Feb. 1985).
In adopting the state freedom of information act in 1972, the people of this state exercised their sovereign power to make a commitment to protect the right of the public to government information. The act rests upon the fundamental premise that government information should be available to the public absent a compelling reason for nondisclosure. This premise, in turn, springs from the principle, embodied in both the state and federal constitutions, that a free press and an informed public are the twin pillars of meaningful public debate. A basic strength of this Republic is the dynamic quality of that debate. Public access to government information is a cornerstone of our democratic institutions. In short, public business is the public's business! Since the majority opinion radically departs from these fundamental principles, I dissent.[19]
I concur only in that part of the majority opinion which awards attorneys' fees to the requestor of the records; denies assessing penalties under the circumstances; and *632 declines on the limited record before us to consider the constitutional claims.
DORE and DURHAM, JJ., concur with ANDERSEN, J.
NOTES
[1] Although this burden might seem onerous, the agency is best suited to determine whether the facts warrant an exemption. Furthermore, the agency can ease this burden by employing counsel to generate operating guidelines for agency employees to ensure compliance with the requirements set forth in this opinion.
[2] RCW 42.17.250-.340.
[3] RCW 42.17.
[4] 5 U.S.C. § 552. See Hearst Corp. v. Hoppe, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).
[5] The Coalition for Open Government (COG) was the moving force behind Initiative 276. Supporting COG were government officials, organized labor, a large segment of the press and such diverse groups as: American Association of University Women; League of Women Voters of Washington; the Municipal League of Seattle and King County; Common Cause; Young Republicans of King County; the Washington Environmental Council; the Washington State Council of Churches; the Seattle Press Club; CHEC-Choose an Effective City Council; and Seattle-King County Bar Association, Young Lawyers Section. See Marianne Kraft Norton's history of the initiative quoted by this court in Fritz v. Gorton, 83 Wn.2d 275, 284-86, 517 P.2d 911, appeal dismissed, 417 U.S. 902, 41 L.Ed.2d 208, 94 S.Ct. 2596 (1974).
[6] Fritz, at 283.
[7] Hearst, at 127.
[8] It should be noted that the act also contains a "prohibition" from disclosure in RCW 42.17.260(5), later amended by the Legislature (certain lists of individuals prohibited from disclosure for commercial purposes).

The Legislature then later added yet another exemption, but for reasons known only to the sponsors of that amendment, this exemption was placed in a separate section rather than being added to the statutory exemptions listed in RCW 42.17.310(1). The additional exemption is RCW 42.17.315 (documents given to colleges, universities, libraries and archives on condition that public access to them be restricted or regulated need not be disclosed).
What is said herein pertaining to the statutory exemptions in RCW 42.17.310(1) also generally pertains to the prohibition from disclosure in RCW 42.17.260(5) and to the additional exemption contained in RCW 42.17.315.
[9] See also AGO 1 (1980).
[10] RCW 42.17.310(2).
[11] RCW 42.17.310(4).
[12] Also see discussion of federal FOIA and exemptions thereunder in NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 221-22, 57 L.Ed.2d 159, 98 S.Ct. 2311 (1978); Stokes v. Brennan, 476 F.2d 699, 700-01 (5th Cir.1973); Duncan v. United States Civil Serv. Comm'n, 426 F. Supp. 41, 43 (E.D. La. 1976); Sonderegger v. United States Dep't of Interior, 424 F. Supp. 847, 851, 856 (D. Idaho 1976).
[13] See RCW 42.17.310; RCW 42.17.260(5); RCW 42.17.315.
[14] King Cy. v. Seattle, 70 Wn.2d 988, 991, 425 P.2d 887 (1967).
[15] RCW 42.17.340(2).
[16] See RCW 42.17.310(1) set out in full herein.
[17] RCW 42.17.310(3).
[18] Nationwide Papers, Inc. v. Northwest Egg Sales, Inc., 69 Wn.2d 72, 76, 416 P.2d 687 (1966).
[19] The majority opinion holds that "[w]e reverse and remand with directions to enter disclosure orders in conformity with this opinion." Since that holding includes a direction to the trial court to reconsider its earlier decision in light of the majority opinion's new "general personal privacy exemption" and new definition of the "right to privacy", I cannot concur in either the majority's holding nor the result thereof.