[No. 9375-1-III.   Division Three.   August 29, 1989.]

THE STATE OF WASHINGTON, *Appellant,* v. EDWARD A. MAXWELL, *Respondent.*

*Andrew K. Miller, Prosecuting Attorney,* and *Jeffrey Finney, Deputy,* for appellant.

*Jeffrey Steinborn,* for respondent.

SHIELDS, J.—The trial court suppressed evidence obtained pursuant to the execution of a search warrant and dismissed the State's prosecution of Edward A. Maxwell, presumably for manufacturing marijuana. The State appeals, contending the credibility of the informant was established as well as the reliability of his information and that the information in the affidavit established probable cause, not mere suspicion. We reverse and remand for trial.

The affidavit[1] stated that the affiant, a member of the Tri–Cities Metro Drug Unit, had received information from

---

[1]The affidavit stated:

"On approximately 09–16–87 I received information from a concerned citizen/neighbor who contacted the Benton County Sheriff's office with the following information: That a house located at 4103 S. Kent had been rented in the last couple of months and that two male subjects had moved some items in, but no one had ever moved in, but would show up a couple of times a day and stay only 15 to 30 minutes at a time. The citizen also stated that all the windows had tin foil on them. I checked and found only one window had tin foil and the rest had curtains or covers over them. Once the citizen overheard two of the subjects talking and heard 'If we ever get caught doing this, we will be in prison forever.' The subjects have also been observed backing a U–haul covered trailer into the garage where it's unhooked and the pickup pulled out and the garage door pulled down. In 15 to 20 minutes they exit and open the garage hook up the trailer and leave.

"The concerned citizen describes 3 vehicles coming and going to the residence. The first is a newer dark Chevy pickup which I believe is Ed Maxwell's and the second is an old El Camino with Oregon license which belongs to David A. [Bruises]. The concerned citizen has been unable to get a license number to a newer Chevy Camaro. The 3rd vehicle the citizen gave a license number that returns on a 1977 Dodge. But the citizen describes it as a Chevy Nova. The citizen will keep an eye out for the car.

"I checked with PUD and found that the current subscriber is a Edward A. Maxwell and his girlfriend Traci L. Wood of 425 Columbia Center Blvd. Apt#F–207. I also ran all 3 license numbers #1 UU6847, a 1986 Chevy pickup belongs to Ed A. Maxwell. #2 Oregon License LJP202, a 1970 El Camino belongs to a David A. Bruises from Azalea Oregon (Douglas County). #3 UKF964 a 1977 Dodge belongs to [Ann] F. Thorselt, Puyallup Washington.

"I've spent time watching the residence. I've noticed that the lawn appears to be dry and uncut. There is only two lights on at all times night and day it's the same lights the front porch and an interior hall light. I've found no signs of habitation in the residence. I've noticed no trash cans out on the curb on garbage day. I checked with Kennewick disposal and found there to be no scheduled service to that residence.

a citizen/neighbor informant regarding activities at a rental house at 4103 S. Kent. During a period of several months, the neighbor had personally observed two male subjects show up for short periods of time, unload their trailer in a closed garage, then leave. He reported the windows were covered with foil and the presence of three vehicles: a dark Chevrolet pickup, an old El Camino and a Chevrolet Nova. The citizen also overheard two subjects state "If we ever get caught doing this, we will be in prison forever."

The affiant attempted to corroborate the information provided by the citizen. He maintained surveillance of the property and reported the grass was dry and uncut, no garbage service was used and that the electrical usage was high for a residence that was unoccupied. He also identified the cars, and learned they were registered to Mr. Maxwell, David Bruises, and the third, described as a Nova but actually a Dodge, was registered to Ann F. Thorselt of Puyallup, Washington. Mr. Bruises was additionally described as having been charged in Oregon with manufacturing marijuana and pleaded guilty to possession of less than 1 ounce in 1978. Certain other stipulated facts were also before the trial court.[2]

---

"I've contacted the PUD they stated that the power usage is normal for a residence that size and if it's being lived in and used but they felt that if no one was living there then the usage is abnormally high.

"The concerned citizen states that when this started back a couple of months ago that most of the visits were in the daytime. Then recently the visits change to later in the evening. At approximately 1100 pm still only lasting 15 to 20 minutes.

"I've checked all the names provided by BIPIN and DOL and I've discovered that David A. [Bruises], the registered owner of the 1970 Chevy El Camino, Oregon License LPJ202 had been convicted on 10-27-78 on a grand jury warrant for manufacture of a controlled substance to–wit; marijuana in Douglas County Oregon. And that he pled guilty to possession for less than one ounce of marijuana."

[2]The stipulation as to facts stated:

"1. The 'Citizen Informant' was incorrect in his assertion that all windows in the residence to be searched were covered with tin foil: only one window was covered with foil.

"2. Citizen was incorrect about license on Chevy Nova. That plate returns to a 1977 Dodge registered to Ann Thorselt.

The trial court, in suppressing the evidence, questioned the lack of underlying facts to establish the credibility of the informant, stating his identity alone was insufficient under *State v. Lair*, 95 Wn.2d 706, 630 P.2d 427 (1981). It also found certain inconsistencies in the facts reported by the neighbor, so reasoned they did not meet the reliability prong of *Aguilar–Spinelli*.[3] It disputed the basis for the conclusion the electrical usage was abnormally high, noting the law requires an identification of the person rendering that opinion. Finally, the court concluded the activities were nothing more than suspicious activity and held the affidavit was legally insufficient to establish probable cause to believe criminal activity was occurring.

■ We first address whether the affidavit sufficiently met the requirements of *Aguilar–Spinelli*.

It is well settled:

> When an informant's tip forms the basis for a search warrant, the affidavit in support of the warrant must establish the basis of information and credibility of the informant in order to

"3. Police investigation failed to establish any link between David [Bruises] and the residence, other than the fact that a vehicle registered to him was allegedly seen at the residence.

"4. When interviewed by the undersigned counsel and Deputy Prosecuting Attorney Jeff Finney, Benton County Deputy Sheriff Hodge stated that he could not recall who at the power company gave him this information. It might have been the manager, the 'security guy,' or one of two clerks who work at the office.

"5. Detective Carlson failed to advise the magistrate that, although he had been to the front door of the residence at least *seven* times, he *never* detected the odor of marijuana, the sound of ballasts or fans, or any bright lights. Detective Carlson was familiar with the smell of growing marijuana, and had used allegations of marijuana smell and/or his observation of bright lights as a part of probable cause for a search warrant.

"6. Although Detective Carlson conducted considerable surveillance of the residence, he *never* saw anyone in the house, or coming or going.

"7. In an interview conducted by the undersigned counsel and Deputy Prosecuting Attorney Jeff Finney, Benton County Detective Sheriff Hodge stated that he merely called an acquaintance at the PUD and requested the information. He made no showing as the basis for his request, nor did he seek or obtain prior judicial approval. He stated that he was investigating a marijuana grow operation."

[3] *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

evaluate the existence of probable cause. *State v. Jackson,* 102 Wn.2d 432, 433, 688 P.2d 136 (1984); *see Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

*State v. Franklin,* 49 Wn. App. 106, 107–08, 741 P.2d 83, *review denied,* 109 Wn.2d 1018 (1987). The two prongs of the *Aguilar–Spinelli* test have independent status and both are required to establish probable cause. *State v. Jackson,* 102 Wn.2d 432, 437, 688 P.2d 136 (1984). However, if the informant's tip fails under either or both of the prongs, probable cause may be established by independent police investigation that "corroborates the tip to such an extent that it supports the missing elements of the *Aguilar–Spinelli* test." *Jackson,* at 438.

■ The trial court first concluded the credibility prong of *Aguilar–Spinelli* was not satisfied. However, the court overlooked the fact this was a known citizen informant, uninvolved in the activity next door. Given these circumstances, different rules apply. In *State v. Rodriguez,* 53 Wn. App. 571, 574–75, 769 P.2d 309 (1989), the court observed:

> When police receive information from an uninvolved witness or victim of a crime, the necessary showing of credibility is relaxed. *State v. Northness,* 20 Wn. App. 551, 556, 582 P.2d 546 (1978). . . .
>
> . . .
>
> [W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case. . . .
>
> . . . The . . . modern view . . . is that as a general proposition any person purporting to be a crime victim or witness may be presumed reliable, . . . Thus, courts frequently emphasize, in the course of holding that veracity was properly presumed, that the police were unaware of any "apparent motive to falsify" or that it did not appear to the police "that the accusations by the citizen were reported to the police merely to spite defendant." . . .

(Footnotes omitted.) 1 W. LaFave, *Search and Seizure* § 3.4(a), at 718–20 (2d ed. 1987).

Mr. Maxwell relies on *State v. Lair, supra,* which considered the reliability of a named informant who had delivered quantities of marijuana to the defendant. *Lair,* at 712

(citing *State v. Sieler,* 95 Wn.2d 43, 48, 621 P.2d 1272 (1980)), held "[t]o the extent that the informant's name is the *only* information claimed to support his or her veracity, we have recently held that a mere name is insufficient." *Lair* can be distinguished, however, because it involved a person other than a citizen informant who was involved in the delivery of marijuana. Those facts are not present here. The informant's name was provided to the police and the magistrate, he was an uninvolved neighbor, and had obtained his information by firsthand observation conducted in an unsuspicious manner. Thus we conclude credibility was established.

█ The court also questioned the basis of knowledge prong, noting discrepancies in the number of windows which were actually covered with foil and the incorrect identification of one of the cars observed at the scene. As noted in *State v. Smith,* 110 Wn.2d 658, 663, 756 P.2d 722 (1988), *cert. denied,* __ U.S. __, 102 L. Ed. 2d 991, 109 S. Ct. 867 (1989); *Rodriguez,* at 574 (citing *State v. Jackson, supra* at 437), to satisfy the basis of knowledge test, the informant may state he has observed the facts personally and is passing on firsthand knowledge. Here, the discrepancies noted by the court in the number of windows covered with foil and the identification of the car as a Chevrolet Nova instead of a Dodge, are minor, were corrected by the affiant, and do not destroy the reliability of the other facts which were corroborated by the affiant. Thus, we conclude the reliability of the information was sufficiently established to satisfy the requirements of *Aguilar–Spinelli.*

The trial court also objected to the method by which the information on the electrical consumption was obtained because the information was procured from an unidentified power company employee by an informal inquiry of the investigating officer. The affiant admitted he merely called an unidentified acquaintance at the PUD and requested the information over the phone on the basis he was investigating a marijuana grow operation.

*In re Rosier,* 105 Wn.2d 606, 615, 717 P.2d 1353 (1986) held that when a police officer has an articulable suspicion of illegal conduct, disclosure of otherwise private information is justified:

> In the present case, the privacy interest in the power usage records is minimal; the information is fairly innocuous and reasonable persons would not be highly offended by its release. We admit that its release to police officers would "highly offend" anyone who engages in illegal activity, *e.g.,* growing marijuana; but this person is not the appropriate measure of a "reasonable person". If the police have an articulable suspicion of illegal acts, the release of the records leads to effective law enforcement, thereby furthering the public interest. Accordingly, the electrical usage information should be released in this case.

*Rosier* was a consolidation of two cases, one in response to a request for a complete list of names and addresses for a political mailing and the other, to a request for electrical usage of particular customers by police officers which would have provided them with information to support probable cause in an affidavit for a search warrant.

In response to the "fishing expedition" or false claim of suspicion problem addressed in *Rosier,* the Legislature passed RCW 42.17.314:

> A law enforcement authority may not request inspection or copying of records of any person, which belong to a public utility district or a municipally owned electrical utility, unless the authority provides the public utility district or municipally owned electrical utility with a *written statement* in which the authority states that it suspects that the particular person to whom the records pertain has committed a crime and the authority has a reasonable belief that the records could determine or help determine whether the suspicion might be true. *Information obtained in violation of this rule is inadmissible in any criminal proceeding.*

(Italics ours.) An application for a search warrant is not a "criminal proceeding", which commences by the filing of a complaint or information. Certainly the subscriber has no privacy interest in his name, which may be obtained by investigating authorities without a written request. Additionally, the statute specifically refers to an inspection or copying of utility records which is not necessary to obtain

the current usage for a particular address. Thus, we conclude for the limited purpose of supporting probable cause to obtain a search warrant, the statute is inapplicable.

■■ Finally, the court concluded the information contained in the affidavit was no more than suspicious activity and did not constitute probable cause to support the issuance of a warrant. Probable cause is established when an affidavit sets forth facts sufficient for a reasonable person to conclude criminal activity is occurring. The issuing magistrate's determination of probable cause will be accorded considerable deference by appellate courts, with doubts as to the existence of probable cause resolved in favor of upholding the warrant. *State v. J–R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988). Here, the circumstances noted in the affidavit might have been viewed only as suspicious activities, absent the overheard statement "[i]f we ever get caught . . ., we will be in prison forever." However, given that statement, we conclude what might have been construed as mere suspicion is raised to the level of probable cause. This conclusion is supported by the reality that grow operations have significantly increased in numbers and sophistication. Certain characteristics found in the recent cases which have come before this court are unique, even indigenous, to grow operations: houses are rented, but remain unoccupied; intermittent visits are made by persons who remain unfamiliar to other members of the neighborhood; activities of the persons visiting the premises are concealed; no effort is spent on exterior upkeep; foil and other materials are used to cover the windows; normal power usage continues or increases despite the fact the house is unoccupied. Other such characteristic circumstances are also recognized in the distribution, trafficking, sale and use of a multitude of controlled substances. Thus, the facts here are distinguished from those of *State v. Huft*, 106 Wn.2d 206, 211, 720 P.2d 838 (1986) which held the affiant's reliance on only two circumstances described by the court as "innocuous facts" (electrical consumption

records and the use of a high intensity light in the basement) was fatal to a finding of probable cause. "Reasonableness and common sense are key ingredients in discovering the absence or presence of probable cause." *State v. Mejia,* 111 Wn.2d 892, 898, 766 P.2d 454 (1989). Given this background, the circumstances cited in the affidavit and the statement made with respect to a possible prison term, it is reasonable to conclude a magistrate would find probable cause and issue the warrant.

Mr. Maxwell also contends the affiant omitted material facts from his affidavit: that he had approached the door to the residence at least seven times, but had never detected an odor of marijuana or the sound of ballasts or fans or the use of bright lights.[4] Those assuredly would have been additional circumstances to support probable cause. However, we decline to make those circumstances prerequisites which must be met before the investigating officer can pursue the matter. While smell can be a critical factor and may be the only basis for issuance of a warrant, *State v. Vonhof,* 51 Wn. App. 33, 41, 751 P.2d 1221, *review denied,* 111 Wn.2d 1010 (1988), *cert. denied,* ___ U.S. ___, 102 L. Ed. 2d 782, 109 S. Ct. 790 (1989), the magistrate is allowed to draw reasonable inferences from the facts presented. Given the characteristic circumstances of a grow operation present here, it was not unreasonable to conclude criminal activity was occurring. *See State v. Christiansen,* 40 Wn. App. 249, 252, 698 P.2d 1059 (1985) (search of home and adjacent 60 acres allowed based upon presence of growing marijuana observed by aerial surveillance).

---

[4]In response to other arguments raised by Mr. Maxwell on this issue, we note in *State v. Cord,* 103 Wn.2d 361, 366, 693 P.2d 81 (1985) the court adopted the test announced in *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) with respect to material omissions of fact, which must be reckless or intentional; there is no evidence of either in the record before us. Mr. Maxwell has also failed to argue a negligent omission in the context of a constitutional question. Thus, we need not address it here. *Cord,* at 368–69.

The trial court's ruling suppressing the evidence and dismissing the prosecution is reversed and the cause is remanded for trial.

GREEN, J., concurs.

THOMPSON, C.J. (dissenting)—I respectfully dissent. The trial court was correct in determining the underlying facts were not sufficient to justify issuance of the search warrant. Its order of suppression should be affirmed.

I disagree with the majority opinion because it effectively renders void an important legislative enactment, ignores the paucity of evidence supporting probable cause, and suggests a marijuana grow operation profile that would permit searches of unoccupied buildings throughout the state.

The majority states RCW 42.17.314 does not apply because it concludes an application for a search warrant is not a "criminal proceeding". It is difficult to perceive the logic of that conclusion, since the only proceeding in which the State conceivably would wish to use evidence of electrical usage is not the type of evidence that ordinarily would be presented in a criminal trial itself. Once electrical usage is used to support the application for a search warrant, its usefulness disappears, and what is discovered, if anything, takes over. The result of the majority's reasoning is that electrical usage information is admissible in the only proceeding in which it is likely to appear. This result effectively does away with any need for law enforcement to concern itself with the mandate and prohibitions contained in RCW 42.17.314. It also conflicts with the clear intent of the statute and its final sentence, which provides: "Information obtained in violation of this rule is inadmissible in any criminal proceeding". Additionally, the actual information obtained regarding electrical usage is so weak as to shed little light on the possibility of criminal activity.[5]

---

[5]Based on decisions in this state, evidence of "abnormally high" power usage is to be given little weight when used to attempt to establish probable cause.

Overall, as the majority observes, the evidence establishing probable cause is weak at best. Probable cause is established when the affidavit sets forth sufficient facts to conclude the defendant probably is engaged in criminal activity. *State v. Huft,* 106 Wn.2d 206, 209, 720 P.2d 838 (1986). The magistrate's determination is accorded great deference, *State v. Cord,* 103 Wn.2d 361, 366, 693 P.2d 81 (1985), but this deference is "not boundless". *United States v. Leon,* 468 U.S. 897, 914, 82 L. Ed. 2d 677, 104 S. Ct. 3405, 3416 (1984); *see State v. White,* 44 Wn. App. 215, 218, 720 P.2d 873 (1986), *review denied,* 107 Wn.2d 1020 (1987). Here, the majority relies heavily on a statement by an unidentified "subject" overheard by the unidentified informant at an undisclosed time. Out of context, the statement means nothing and is in no way tied to the defendant. If it were, it is difficult to perceive it as the type of admission that would justify the issuance of a search warrant: What does it mean? Were the two stealing a car? Were they running a crack house? Were they planning a bank robbery? Were they trying to be funny? Even if it were evidence of criminal activity by the defendant, the statement does not "support the reasonable probability that the criminal activity was occurring at or about the time the warrant was issued." *State v. Higby,* 26 Wn. App. 457, 460, 613 P.2d 1192 (1980).

The affidavit never mentions the word "marijuana" except in detailing the criminal history of a person who was never linked to the defendant or the house, other than that a car registered to him had been seen there. When the probable cause issue revolves around the question whether a crime has even occurred, a high degree of probability should be required. 1 W. LaFave, *Search and Seizure* §

---

*State v. Murray,* 110 Wn.2d 706, 710–12, 757 P.2d 487 (1988); *State v. Huft,* 106 Wn.2d 206, 211, 720 P.2d 838 (1986); *State v. White,* 44 Wn. App. 215, 217, 720 P.2d 873 (1986), *review denied,* 107 Wn.2d 1020 (1987); *State v. Sterling,* 43 Wn. App. 846, 851, 719 P.2d 1357, *review denied,* 106 Wn.2d 1017 (1986); *State v. McPherson,* 40 Wn. App. 298, 698 P.2d 563 (1985).

3.2(e), at 603–04 (2d ed. 1987). The warrant should not have been issued on these meager facts.

Finally, the majority appears to take judicial notice of what a marijuana grow operation looks like, and seems to promote the position that facts supporting probable cause can be given greater credibility if they fit a grow operation profile. There is no question that grow operations are a threat to the community and must be curtailed, but taking judicial notice of generalized, inarticulable suspicions and activity with no particular criminal connotations is ill advised. This is not a proper subject for judicial notice. *See Bechtel Civil & Minerals, Inc. v. South Columbia Basin Irrig. Dist.,* 51 Wn. App. 143, 147–48, 752 P.2d 395 (1988); ER 201(b). The majority seems to favor using a "totality of the circumstances" analysis, which was rejected in *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984). The position taken by the majority permits searches of virtually any abandoned, unoccupied or vacant structure in the state.

I do not advocate hypertechnical and Catch 22 dissection of search affidavits to justify suppression of evidence. But forgoing or failing to adhere to constitutional, statutory, and precedential principles hardly promotes the best interests of our citizenry.

> Rights secured by the Fourth Amendment are particularly difficult to protect because their "advocates are usually criminals." *Draper* v. *United States,* 358 U. S. [307, 314, 3 L. Ed. 2d 327, 79 S. Ct. 329, 333 (1959)] (Douglas, J., dissenting). But the rules "we fashion [are] for the innocent and guilty alike." *Ibid.* See also *Kolender* v. *Lawson,* 461 U. S. 352, 362, n. 1 [75 L. Ed. 2d 903, 103 S. Ct. 1855] (1983) (BRENNAN, J., concurring); *Brinegar* v. *United States,* 338 U. S. [160, 181, 93 L. Ed. 1879, 69 S. Ct. 1302, 1313 (1949)] (Jackson, J., dissenting).

*Illinois v. Gates,* 462 U.S. 213, 290–91, 76 L. Ed. 2d 527, 103 S. Ct. 2317, 2360 (1983) (Brennan, J., dissenting).

I respectfully dissent.

Review granted at 113 Wn.2d 1028 (1989).