[No. 13518-3-II. Division Two. April 17, 1992.]

THE CITY OF TACOMA, *Respondent*, v. TACOMA NEWS, INC., *Appellant*, DOE FAMILY I, *Respondent*.

*William E. Holt, John C. Guadnola, Judy Rae Jasprica,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*William Barker, City Attorney,* and *Kathryn B. Gerhardt, Assistant; Fredric C. Tausend, Michele A. Gammer,* and *Preston Thorgrimson Shidler Gates & Ellis,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Jaqueline B. Rosenblatt, Assistant,* amicus curiae for respondents.

MORGAN, J. — The Morning News Tribune sought access to police investigation materials by invoking the public disclosure act, RCW 42.17. The trial court denied access, and we affirm.

In August 1989, the Tribune made a request for access to a certain police incident report prepared and possessed by the Tacoma Police Department. Later the same month, the Tribune made a second request for access to certain letters also possessed by the police department. The Tribune made both requests pursuant to the public disclosure act, RCW 42.17.

The police incident report concerned an allegation that a parent had criminally abused a dependent minor. The allegation came solely from an anonymous hearsay informant. The allegation was investigated or reviewed by several agencies, including the Tacoma Police Department (TPD), the Department of Social and Health Services, the Pierce County Prosecutor's office and the King County Prosecutor's

office. Each agency found that the allegation could not be substantiated.

Several months after it was determined that the allegation could not be substantiated, several letters supportive of the parent were received by TPD. These letters related directly to the subject matter of the investigation. They were not attached to the incident report or filed with the record-keeping division of TPD. The Tribune asserts that they were filed in the police chief's correspondence file.

The City denied disclosure of the incident report and the letters. It then filed a declaratory judgment action naming the Tribune[1] and, by pseudonym, other parties thought to be interested.[2] The Tribune asserted that the requested documents pertained to a candidate for Mayor of Tacoma, and that the candidate was a public figure. It further asserted that the candidate was supported for election by the police union, a fact which, according to the Tribune, raised the possibility that the police might not have conducted a full and fair investigation. The trial court conducted a show cause hearing that included an in camera review of the disputed documents. The trial court denied disclosure, and the Tribune appealed.

We review de novo. RCW 42.17.340(2). The City is a public agency, RCW 42.17.020(1), and the disputed documents are public records. RCW 42.17.020(27). Public records possessed by a public agency are subject to disclosure unless an exemption or prohibition applies. RCW 42.17.260. Exemptions are to be narrowly construed, *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978), and an agency refusing dis-

---

[1] The Tribune also filed its own complaint for writ of mandamus and damages. The trial court consolidated the actions, and for convenience we refer to the two as one.

[2] The other parties are Doe Family I (the family of the parent and minor), Doe Family II (apparently the family of the informant), and the State of Washington as amicus curiae. For convenience, we will refer only to the City except when the context requires otherwise.

closure has the burden of showing that an exemption applies. RCW 42.17.340.

RCW 42.17.310 catalogs various exemptions. RCW 42.17-.310(1)(d) exempts from disclosure

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

For RCW 42.17.310(1)(d) to apply, three elements must be met. (1) The disputed documents must be specific investigatory records or contain specific intelligence information; (2) they must have been compiled by an investigative, law enforcement or penology agency; and (3) nondisclosure must be essential to either (a) effective law enforcement or (b) the protection of any person's right of privacy. *Tacoma News, Inc. v. Tacoma-Pierce Cy. Health Dep't*, 55 Wn. App. 515, 520, 778 P.2d 1066 (1989), *review denied*, 113 Wn.2d 1037 (1990).

The first two elements are met here. The disputed documents are specific investigative records compiled by a law enforcement agency.[3]

The third element supplies the central issue. We focus on privacy rather than effective law enforcement because the parties have done that at trial and on appeal, and because the trial court ruled on the basis of privacy.[4]

The Washington Legislature defined privacy in RCW 42.17.255. That statute provides in part:

> A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is

---

[3]The Tribune argues that the letters, as opposed to the incident report, were not investigatory records compiled by a law enforcement agency. It relies on its assertion that the letters were not physically filed and retained as part of the police department's investigatory file. The location in which the letters were physically filed or retained is one factor to look at, but is not by itself dispositive. Viewing the evidence as a whole, it is apparent that the letters were received and retained in connection with the investigation, and that they were investigatory records within the meaning of the statute.

For its part, Doe Family I asserts that the letters were not public records. For purposes of this opinion, however, we assume that they were.

[4]The City contends that RCW 26.44 and RCW 13.50 were "the basis of denial of disclosure of the documents in issue", but we can find no indication of that. The trial court's findings and conclusions cite RCW 42.17, parallel the language of RCW 42.17.255, and do not mention RCW 26.44 or RCW 13.50.

invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.

The Tribune does not contest that disclosure of the disputed documents would be highly offensive to a reasonable person. Therefore, the privacy issue is whether an unsubstantiated allegation of child abuse is of legitimate concern to the public.

In its main argument, the Tribune asserts (1) that the information in the disputed documents alleges child abuse; (2) that it pertains to a political candidate; (3) that a political candidate is a public figure for purposes of the common law; and (4) that the information, if true, is a matter of legitimate public concern. Relying on RCW 42.17.255, the Tribune then says (5) that the City and the trial court were precluded from considering whether the information was true or false, or in other words, that the City and the trial court were required to assume that the information was true.[5] It therefore concludes that the disputed documents are a matter of legitimate concern to the public.

We assume that the first four of these propositions are correct.[6] The fifth, however, is incorrect. To show why, we start with the common law.

---

[5]At one point in its brief, the Tribune says:
[D]isclosure of the charges would be no more an invasion of privacy if the charges were false and no less an invasion of privacy if they were true. Truth or falsity is irrelevant where the issue is the right of privacy.
Brief of Appellant, at 30. At another point, it says:
Whether a person's right of privacy is invaded by disclosure of such charges is determined without regard to whether the charges are true or false; the court should not weigh the evidence submitted to the police. Invasion of the right of privacy under § 652D of the Restatement (Second) of Torts is determined by assuming the information is true. Section 652D is intended to determine whether true statements of fact should be made public. As the commentary to that section says:
This section provides for tort liability involving a judgment for damages for publicity given to *true* statements of fact. (Emphasis added [by appellant].)
Brief of Appellant, at 27-28. The quoted commentary is taken from Restatement (Second) of Torts § 652D Special Note, at 383 (1977).

[6]As the Tribune points out, the third proposition is correct as a matter of law. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 274, 28 L. Ed. 2d 35, 42, 91 S. Ct. 621 (1971). We do not consider whether the others are valid.

For much of this century, the right to privacy has been protected by the common law tort of invasion of privacy. According to the Restatement (Second) of Torts (1977) (hereinafter Restatement), that tort can be committed in four ways, Restatement § 652A; *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469, 722 P.2d 1295 (1986); *Mark v. Seattle Times*, 96 Wn.2d 473, 497, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124, 73 L. Ed. 2d 1339, 102 S. Ct. 2942 (1982), two of which are pertinent here.[7]

Restatement § 652D describes when liability will be imposed for publicizing a true statement. Restatement, at 383. It provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
> (a) would be highly offensive to a reasonable person, and
> (b) is not of legitimate concern to the public.

Restatement § 652E describes when liability will be imposed for publicizing a false statement. *Magenis v. Fisher Broadcasting, Inc.*, 103 Or. App. 555, 558, 798 P.2d 1106, 1108 (1990); *Sullivan v. Pulitzer Broadcasting Co.*, 709 S.W.2d 475, 478 (Mo. 1986); *Renwick v. News & Observer Pub'g Co.*, 310 N.C. 312, 328, 312 S.E.2d 405, 415 (1984) (Meyer, J., concurring in part, dissenting in part). It provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

These sections contemplate that whether information is true or false will be considered in the course of deciding

---

[7]The two not pertinent here are described in Restatement § 652B and § 652C. Section 652B relates to intrusions upon seclusion. Section 652C relates to appropriating to one's own use the name or likeness of another. Interestingly, at least part of the concept underlying § 652C was included by the Legislature in RCW 42.17.260(6).

whether the release or publication of such information will violate privacy. As can be seen, the two sections contain different criteria, and until it is decided whether the information in question is true or false, there is no way of knowing which set of criteria should be applied.

The language that is now RCW 42.17 was first enacted in 1972. Initiative 276 (1972); Laws of 1973, ch. 1, § 26. It exempted certain public records from disclosure when disclosure would violate the right to privacy. RCW 42.17.310-(1)(b), (c), (d).[8] However, it did not define the right to privacy. *Hearst Corp. v. Hoppe*, 90 Wn.2d at 135.

In *Hearst Corp. v. Hoppe, supra,* the Supreme Court was called upon to fill the void. It said that "the legislature intended the right of privacy to mean what it meant at common law", 90 Wn.2d at 135, and that "[t]he most applicable privacy right would appear to be that expressed in tort law." 90 Wn.2d at 135. Because the plaintiff sought records containing information the truth of which was not disputed, the court adopted and applied Restatement § 652D. 90 Wn.2d at 136.

█ The *Hearst* court was not dealing with records said to contain false information, and it did not preclude the application of § 652E in a case involving such records. By the same token, it did not preclude public agencies or courts from considering, in a proper case, whether information set forth in public records was true or false. As noted previously, its holdings were that the Legislature intended the right of privacy to mean what it meant in the common law of torts, and that § 652D should be applied because true information was being dealt with. It did not alter the fact that the common law of torts includes both Restatement § 652D and Restatement § 652E; that § 652D sets forth criteria for deciding whether true information invades the right to privacy, while § 652E sets forth different criteria for deciding whether false information invades the right to

---

[8]Except for one minor change not pertinent here, the original version of RCW 42.17 contained RCW 42.17.310(1)(b), (c) and (d) as they exist today. Laws of 1973, ch. 1, § 31(b), (c), (d).

privacy; and that it is necessary to consider and decide whether information is true or false before deciding whether § 652D or § 652E should be applied.

In 1987, the Legislature enacted Laws of 1987, ch. 403. Apparently, its primary purpose was to statutorily reverse *In re Rosier*, 105 Wn.2d 606, 717 P.2d 1353 (1986).[9] Also, however, it statutorily defined the right to privacy. In section 2 of the act, it said that privacy or the right of privacy "is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." Section 2 was then codified as RCW 42.17.255.

It is the relationship of RCW 42.17.255 to the Restatement that gives the Tribune's argument whatever force it has. RCW 42.17.255 embodies Restatement § 652D, but not § 652E. Restatement § 652D contains only the criteria for determining when true information invades privacy. Therefore, according to the Tribune, RCW 42.17.255 requires public agencies and courts to assume that all information in public records is true.

The argument fails because it is contrary to the plain meaning of RCW 42.17.255. As a matter of common sense, one factor bearing on whether information is of legitimate concern to the public is whether the information is true or false. Using this case as an example, the information here is surely of less concern to the public if it is false than if it is true. If we are to abridge common sense by holding that agencies and courts can never consider whether information

---

[9]In *Rosier*, the Supreme Court had held that agencies must "consider and protect personal privacy in *every* request for information, not merely in requests for specified highly sensitive information" listed in RCW 42.17.310(1). *Rosier*, 105 Wn.2d at 611. In Laws of 1987, ch. 403, § 1, the Legislature declared its intent "to restore the law relating to the release of public records largely to that which existed prior to the Washington Supreme Court decision in '*In re Rosier*', 105 Wn.2d 606 (1986)." Laws of 1987, ch. 403, § 1. The Legislature said that "agencies . . . should rely only upon statutory exemptions or prohibitions for refusal to provide public records", Laws of 1987, ch. 403, § 1, and that the provisions of RCW 42.17 "do not create any right of privacy beyond those rights that are specified in this chapter as express exemptions . . .." Laws of 1987, ch. 403, § 2; RCW 42.17.255.

is true or false, some reason for so doing should appear on the face of the statute. None does.

The argument also fails if we look beyond the plain meaning of the statute to the intent of the Legislature. In Laws of 1987, ch. 403, § 1, immediately preceding the language that became RCW 42.17.255, the Legislature said:

> Further, to avoid unnecessary confusion, "privacy" as used in [RCW 42.17.255] is intended to have the same meaning as the definition given that word by the Supreme Court in "*Hearst v. Hoppe*," 90 Wn.2d 123, 135 (1978).

Laws of 1987, ch. 403, § 1. Thus, the Legislature said that it intended RCW 42.17.255 to have the same meaning as *Hearst*; *Hearst* equated privacy for purposes of RCW 42.17 with the Restatement's description of the common law tort of invasion of privacy; and the common law as expressed in the Restatement allows consideration of whether information is true or false. Consequently, we believe that the Legislature intended to allow public agencies and courts to consider whether information in public records is true or false, as one factor bearing on whether the records are of legitimate public concern within the meaning of RCW 42.17.255.[10]

If RCW 42.17.255 allows agencies and courts to consider whether information in public records is true or false, it also allows them to consider whether such information has been substantiated. If information remains unsubstantiated after reasonable efforts to investigate it, that fact is indicative though not always dispositive of falsity.

Our construction of RCW 42.17.255 is confirmed by RCW 26.44.010, although we do not hold that the latter statute, by itself, authorizes nondisclosure of the records in this case. RCW 26.44.010 declares that reports of child abuse shall "be maintained and disseminated with strictest regard for the privacy of the subjects of such reports and so as to safeguard against arbitrary, malicious or erroneous

---

[10]We need not decide whether truth or falsity is a factor bearing on whether information in public records would be highly offensive to a reasonable person if disclosed.

information or actions". This declaration, and particularly the statement about safeguarding against arbitrary, malicious and erroneous information, manifests a legislative intent that child abuse reports not be released without first considering whether the information contained therein is true or false.

■ Our construction of RCW 42.17.255 is also confirmed to some extent by cases decided under the Federal Freedom of Information Act. That act exempts investigatory records from disclosure if disclosure would constitute an "unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(c), and cases construing it have approved the nondisclosure of unsubstantiated information contained in criminal investigative records compiled by the Watergate Special Prosecution Force. *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981); *Common Cause v. National Archives & Records Serv.*, 628 F.2d 179 (D.C. Cir. 1980); *Laborers' Int'l Union v. United States Dep't of Justice*, 578 F. Supp. 52, 57-58 (D.D.C. 1983), *aff'd*, 748 F.2d 714 (D.C. Cir. 1984); *Congressional News Syndicate v. United States Dep't of Justice*, 438 F. Supp. 538 (D.D.C. 1977) (records of illegal campaign contributions); Annot., *What Constitutes "Unwarranted Invasion of Personal Privacy" for Purposes of Law Enforcement Investigatory Records Exemption of Freedom of Information Act*, 52 A.L.R. Fed. 181 (1981). If Watergate information is exempt due to its unsubstantiated nature, a fortiori information of the sort present here should also be exempt.

■■ A second, related argument made by the Tribune is that even if the unsubstantiated nature of a child abuse allegation can be considered, such consideration is to be by the press as opposed to public agencies or the courts.[11] Citing

---

[11]In its brief, the Tribune says: "Regardless of whether the Tribune would publish the nature of the charges, it was improper for the trial court to withhold this information. The trial court prevented the Tribune from exercising its right *of determining what it will or will not print*. The trial court was exercising a form of censorship; a prior restraint on the Tribune's free exercise of its First Amendment right of freedom of the press. *State v. Coe*, 101 Wn.2d 364, 679 P.2d 353 (1984). This restraint, of course, is prohibited except in the most unusual cases." Brief of Appellant, at 32.

*State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984), the Tribune correctly points out that the press has the right to determine whether it will publish information already disclosed, subject only to the laws on defamation and privacy. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964); *Time, Inc. v. Hill,* 385 U.S. 374, 17 L. Ed. 2d 456, 87 S. Ct. 534 (1967). However, the First Amendment does not guarantee the press a constitutional right of access to information not yet disclosed and not available to the public generally. *Branzburg v. Hayes,* 408 U.S. 665, 684, 33 L. Ed. 2d 626, 641, 92 S. Ct. 2646 (1972). The press' right to such information is no more and no less than what the Legislature has chosen to grant by statute, and in RCW 42.17 the Legislature expressly authorized public agencies and courts to consider whether information should be disclosed. *E.g.,* RCW 42.17.260(1); RCW 42.17.310(2)-(4); RCW 42.17.311; RCW 42.17.320; RCW 42.17.330; RCW 42.17.340; *see also Multicare Med. Ctr. v. Department of Social & Health Servs.,* 114 Wn.2d 572, 790 P.2d 124 (1990) (duty of courts to interpret statutes); *Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 555, 637 P.2d 652 (1981) (same); *Hearst Corp. v. Hoppe,* 90 Wn.2d at 130. Thus, when disclosure of public investigatory records is resisted due to privacy, the involved agency and the courts have a duty to interpret and apply RCW 42.17.310(1)(d), and pursuant to that duty, they must consider all relevant factors bearing on whether the information in the records is of legitimate public concern.

The documents sought in this case are exempt from disclosure due to RCW 42.17.310(1)(d). The information that they allegedly contain was initially provided by an anonymous informant. The trial court expressly found that that information was investigated by the Tacoma Police Department, Department of Social and Health Services, and "the Prosecutor's Office."[12] The trial court further found, "Each of the governmental agencies concluded that the allegation was

---

[12]As noted above, the information was reviewed by two prosecutors' offices, but the trial court's finding refers only to one such office.

unsubstantiated." Given these findings, the trial court did not err when it upheld the City's determination that the requested documents were not of legitimate concern to the public within the meaning of RCW 42.17.310(1)(d).

Several other arguments merit brief discussion. The Tribune argues that the records should be released because the public has a legitimate right to know how diligently the police investigated the information provided by the anonymous informant, and that that is particularly important if in fact the information pertains to a candidate who was being supported by the police union. While we do not rule out the possibility this type of argument might override the need for privacy in a particular case, it is not persuasive here. The records give no hint of a less than adequate investigation. Moreover, if it be assumed that the parent was a political candidate supported by the police union, any inference that police bias affected the outcome is substantially negated by the fact that three other professional agencies reviewed the case and reached the same conclusion as the police.

The Tribune argues that the public has a legitimate interest in knowing whether the persons who wrote letters supporting the parent were public officials, and in knowing whether the parent cooperated with the investigation. We disagree. Nothing in the record tends to show that any person acted in any way that was inconsistent with his or her rights as a citizen.

The Tribune argues that the City waived its right to withhold the documents, because it routinely releases to the press and public police reports describing arrests and verified crimes. We disagree. This record does not show that the City ever released reports of criminal conduct when there was no probable cause to believe that a crime had been committed, and there was no probable cause here.

Finally, the Tribune argues that the disputed documents should be released after redaction of the names of the alleged victim and informant. For two reasons, however, redaction would accomplish nothing. First, whatever information was not redacted would continue to be unsubstantiated and not of legitimate concern to the public. Second,

identification of the parent would inevitably lead to the identification of others allegedly involved.

Affirmed.

PETRICH, C.J., and WORSWICK, J. Pro Tem., concur.

Review denied at 119 Wn.2d 1020 (1992).