[No. 31102-6-I.  Division One.  December 27, 1993.]

JOHN SERVAIS, *Appellant,* v. THE PORT OF BELLINGHAM, *Respondent.*

184

*Joseph T. Pemberton* and *Pemberton & Hoogestraat; William R. Hickman, Marilee C. Erickson,* and *Reed McClure,* for appellant.

*Frank J. Chmelik* and *Chmelik & Johnson, P.S.,* for respondent.

PEKELIS, A.C.J. — John Servais appeals from the trial court's ruling that the cost analysis information he sought from the Port of Bellingham (the Port) is exempt from disclosure under the Washington public disclosure act (WPDA). We affirm.

In 1990, the Port commissioned Coopers & Lybrand, a national accounting and business consulting firm, to conduct a market feasibility study to determine potential uses of various Port properties, including leasing Port property for development.[1] The Port made this study available to the public.

Based on the results of the study, the Port asked Coopers & Lybrand to prepare a cash flow analysis for some of the potential developments identified in the study. This cash flow analysis or "financial data", as the trial court referred to it, is at issue in this case. The Port commissioned this information to assist it in negotiating lease rates with potential developers. In general, the financial data consists of projected cash flows, occupancy rates, room rates, and revenue figures for potential hotel developments on Port property.

On September 24, 1991, Servais submitted a written request to inspect the financial data. The Port orally refused. On November 4, 1991, Servais received the Port's written refusal, which consisted of an internal Port memorandum, stating that the financial data was exempt from public disclosure under RCW 42.17.310(1)(h), the valuable formulae/research data exemption to the WPDA.

Servais then filed suit under the WPDA seeking disclosure of the financial data. At the initial hearing on February 2, 1992, the trial court reviewed the financial data in camera. On June 19, 1992, the court dismissed Servais' claim and awarded the Port $155 in attorney's fees and costs.

The court made the following findings of fact, which state in relevant part:[2]

1. The data withheld by the Port of Bellingham is financial data.

2. That the Port of Bellingham commissioned this data in order to provide for a public gain; (a) namely, to negotiate from

---

[1]Ports are charged with promoting economic development. *See* RCW 53.04, .08. Ports are authorized to meet this mandate by various means, including leasing Port property for development. *See* RCW 53.08.040, .080.

[2]Although labeled findings of fact, they are more appropriately denominated mixed findings of fact and conclusions of law.

a position of a well-informed landlord; and (b) to have the necessary information to value the expected long-term leases.

3. That any hotel development company would keep this type of information private and confidential so that it could deal from its own position of strength.

. . . .

6. That the financial data is valuable formulae and/or research data as defined in R.C.W. 42.17.310(1)(h) in that it was obtained by the Port specifically to assist the Port in negotiating leases of its property.

7. That the release of the financial data would produce a private gain and a public loss.

Servais assigns error to the trial court's conclusion that the financial data is exempt from public disclosure under RCW 42.17.310(1)(h), the valuable formulae/research data exemption.[3]

Under the WPDA, appellate review is de novo. *Tacoma v. Tacoma News, Inc.*, 65 Wn. App. 140, 143, 827 P.2d 1094, *review denied*, 119 Wn.2d 1020 (1992). *See* former RCW 42.17-.340(2) (current version at RCW 42.17.340(3) (1992)). The Port is a public agency, RCW 42.17.020(1), and the undisclosed documents are public records. RCW 42.17.020(27).

In general, agencies must disclose all public records, unless the record falls within a specific exemption or another prohibition applies. RCW 42.17.260(1). Exemptions from public disclosure are to be narrowly construed. *Tacoma News*, 65 Wn. App. at 143 (citing *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978)); *see also* RCW 42.17.251 (enacted in 1992). An agency relying on an exemption has the burden of proving that the record falls within the exemption. *Tacoma News*, 65 Wn. App. at 143-44.

At issue is the scope of RCW 42.17.310(1)(h), which exempts from disclosure:

Valuable formulae, designs, drawings, and research data obtained by any agency within five years of the request for

[3]Although Servais also contends that the Port failed to index public records and delayed in responding to his public records request, we do not review these issues because they were not raised below. *See State v. Scott*, 110 Wn.2d 682, 684, 757 P.2d 492 (1988); RAP 2.5(a).

disclosure when disclosure would produce private gain and public loss.

To be exempt from disclosure, the statute requires that: (1) the disputed material be valuable formulae, designs, drawings, or research data; (2) the agency have obtained the material within 5 years of the request; and (3) the disclosure of this material produce a private gain and public loss.

We are asked for the first time to interpret RCW 42.17-.310(1)(h). Specifically, we must decide whether the financial data constitutes "research data" as the term is used, but not defined, in RCW 42.17.310(1)(h).

It is well known that our primary objective when interpreting statutes is to ascertain and give effect to the intent behind the statute.[4] *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). When determining the meaning of particular words in a statute, we must consider the statute's subject matter and the context in which the words are used. *In re Pepperling*, 65 Wn. App. 17, 21, 827 P.2d 347 (1992). In addition, we may look to the dictionary definition to aid our interpretation. *Pepperling*, at 21.

Servais contends that the term "research" contemplates some scientific inquiry not applicable to the financial data at issue. Servais relies on several dictionary definitions, including the second definition found in *Webster's Third New International Dictionary* 1930 (1969), which defines "research" as:

> **1 :** careful or diligent search : a close searching . . . **2 a :** studious inquiry or examination; *esp* : critical and exhaustive investigation or experimentation having for its aim the discovery of new facts and their correct interpretation, the revision of accepted conclusions, theories, or laws in the light of newly discovered facts, or the practical applications of such new or revised conclusions, theories, or laws . . ..

The Port, on the other hand, cites the following definition of "research": "careful or diligent search [and] . . . the collecting

---

[4]We note that the WPDA was originally enacted through the initiative process, although it has been amended several times by the Legislature since its enactment in 1972. The general rules of statutory construction apply to the interpretation of initiatives. *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 426 n.3, 833 P.2d 375 (1992).

of information about a particular subject." *Webster's Ninth New Collegiate Dictionary* 1002 (1990).

Servais also contends that the financial data is not "data" because the term "data" applies to existing facts, not opinion, as the Port has characterized Coopers & Lybrand's conclusions. Servais again relies on *Webster's Third New International Dictionary* 577 which defines "datum" as:

> **1 a** : something that is given either from being experientially encountered or from being admitted or assumed for specific purposes : a fact or principle granted or presented : something upon which an inference or an argument is based or from which an intellectual system of any sort is constructed . . . **b** (1) . . . material serving as a basis for discussion, inference, or determination of policy . . . (2) : detailed information of any kind . . ..

The Port responds that "[t]he financial data is the expert opinion of Coopers & Lybrand based on their research . . .. The compilation of the data was performed by experts and cannot be derived from simple factual information." The Port relies on the definition found in Black's Law Dictionary which defines "data" as: "Organized information generally used as the basis for an adjudication or decision. Commonly, organized information, collected for specific purposes." Black's Law Dictionary 395 (6th ed. 1990).

In reviewing the dictionary definitions cited by the parties, it is evident that the meaning of both "research" and "data" ranges from the general to the specific, with the general meaning listed first. As Oliver Wendell Holmes stated in *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417 (1898-1899):

> A word generally has several meanings, even in the dictionary. You have to consider the sentence in which it stands to decide which of those meanings it bears in the particular case, and very likely will see that it there has a shade of significance more refined than any given in the word-book.

Based on our review of the context in which "research data" is used, we conclude that the general definition was intended.

In addition to "research data", RCW 42.17.310(1)(h) exempts valuable formulae, designs, and drawings. It is Servais' position that these terms, taken in context, relate solely to scientific or patented materials and, therefore, financial data cannot be "research data".[5]

█ We disagree. The statute itself contains no scientific qualification. In fact, "valuable formulae, designs, and drawings" are not necessarily scientific in nature, nor is "research data" as the term is defined generally. The first meaning of "research" found in the dictionary cited by Servais is "careful or diligent search : a close searching". Only in the second meaning does the definition narrow so as to imply a scientific inquiry.

██ Moreover, our interpretation is consistent with the purpose of the exemption,[6] which is to prevent disclosure of the listed materials when disclosure would result in "private gain" and "public loss". To fulfill this purpose, it is irrelevant whether the research datum, valuable formulae, designs, or drawings at issue are scientific or not. Rather, the crucial inquiry is whether the disclosure of these materials would harm the public interest by allowing private gain at public expense.

For these reasons, we conclude that the term "research data", as used in RCW 42.17.310(1)(h), was intended to be defined generally. Based on the dictionary definitions, "research data" in this context is organized information or material derived from a careful or diligent search which serves as a basis for discussion or decision.[7]

---

[5]Although Servais also contends that the financial data is not "*valuable formulae*" for the same reason, this is the sum total of Servais' argument about "valuable formulae". The trial court found that the financial data is *either* valuable formulae and/or research data. Because we hold that the financial data is research data, as the term is used in RCW 42.17.310(1)(h), we need not decide whether the financial data is also valuable formulae.

[6]*See Longview Fibre Co. v. Cowlitz Cy.*, 114 Wn.2d 691, 696, 790 P.2d 149 (1990) (stating that when interpreting legislation, we must give effect to the purpose and intent of the legislation).

[7]We reject Servais' additional contention that the definition of "research" found in RCW 42.48.010(4), governing when certain state agencies may release individual records for research purposes, should be applied to RCW 42.17.310(1)(h).

It follows from our conclusion that the financial data falls within this definition of research data. First, the Coopers & Lybrand cash flow analysis is organized information consisting of projected cash flows, occupancy rates, room rates, and revenue figures for potential hotel developments. Second, the projected figures are based on a careful and diligent search of the hotel industry, market conditions, and the nature of the Port's property. Third, the information is meant to be a basis for the Port's negotiations or discussions with potential lessees.

We also conclude that the requirement that disclosure would result in private gain and public loss is met. The trial court found that private developers would benefit by insight into the Port's negotiating position if the financial data were disclosed, thereby resulting in a loss to the public. Servais does not dispute this finding, but takes the position that public loss from disclosure is a small price to pay when complying with the WPDA's full disclosure policy. However, Servais' argument fails to appreciate the fact that the policy is embodied within RCW 42.17.310(1)(h) itself, namely that nondisclosure is deemed to outweigh disclosure where public loss would result.

Lastly, we reject Servais' additional arguments in support of his contention that the financial data is not exempt under RCW 42.17.310(1)(h). First, Servais argues that because RCW 42.17.310(1) contains exemptions which specifically refer to "financial information", any and all financial data can be exempt only if it falls within a "financial information" exemption. It is clear, however, that the "financial information" exemptions were designed to protect *private individuals* from the harm of disclosure when they are *statutorily required* to supply financial information to the State.[8] These

---

Legislative definitions control the construction of statutes in which they appear. If the same word or phrase is used in another statute, "the meaning depends on common usage and the context in which it is used, unaffected by other statutory definitions." *Childers v. Childers*, 89 Wn.2d 592, 598, 575 P.2d 201 (1978).

[8]For example, 42.17.310(1)(o) exempts commercial and financial information supplied by private persons for export services provided pursuant to RCW 43.163 and RCW 53.31.

exemptions are clearly distinguishable from situations, such as this, where a government agency *commissions* financial data from an outside source and then seeks to protect *the public* from the harm of disclosure.

Second, Servais argues that, even if the financial data constitutes research data, exempting it from disclosure under RCW 42.17.310(1)(h) would impermissibly conflict with the indexing requirement of former RCW 42.17.260(2)(e).[9]

RCW 42.17.260(1) provides that all public records shall be disclosed unless a record falls within an exemption. Former RCW 42.17.260(2) (current version at RCW 42.17-.260(3)) provides that each local agency shall maintain and make available to the public a current index providing "identifying information" as to the records listed in former RCW 42.17.260(2)(a)-(f). When resolving a conflict between two statutes, we must look at the statutory context as a whole to give effect to the intent underlying the legislation. *Maxwell v. Department of Social & Health Servs.*, 30 Wn. App. 591, 595, 636 P.2d 1102 (1981). Any conflict is resolved when the indexing requirements of RCW 42.17.260(2) are read in conjunction with RCW 42.17.260(1) to mean that records must be indexed unless exempt from disclosure pursuant to RCW 42.17.310. This interpretation is also consistent with the stated purpose of former RCW 42.17.260(2), which is to provide "identifying information" about public records. Our interpretation avoids the absurd result of requiring an agency to provide "identifying information" about exempt records. *See State v. Walter*, 66 Wn. App. 862, 870, 833 P.2d 440 (1992), *review denied*, 121 Wn.2d 1033 (1993).

Third, we reject Servais' contention that the Freedom of Information Act (FOIA) exemption, 5 U.S.C. § 552(b)(4), supports the conclusion that the financial data is not exempt

___

[9]Former RCW 42.17.260(2)(e) lists:

"Factual staff reports and studies, factual consultant's reports and studies, scientific reports and studies, and any other factual information derived from tests, studies, reports, or surveys, whether conducted by public employees or others . . .".

under RCW 42.17.310(1)(h).[10] Although cases interpreting FOIA are relevant to interpreting the WPDA, *Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993), the language of the two exemptions is not the same. Servais completely disregards the private gain/public loss clause of RCW 42.17-.310(1)(h). Thus, the federal exemption is not relevant to our interpretation of RCW 42.17.310(1)(h).

We conclude that the Port's financial data constitutes "research data", which if disclosed, would produce private gain and public loss. Therefore, the trial court correctly determined that the financial data is exempt from disclosure under RCW 42.17.310(1)(h).[11]

Affirmed.

WEBSTER, C.J., and BAKER, J., concur.

Review granted at 124 Wn.2d 1001 (1994).

---

[10]This exemption protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential". 5 U.S.C. § 552(b)(4).

[11]Because we affirm the trial court, Servais' claim under RCW 42.17.340(3) for attorney's fees, costs, and a penalty for nondisclosure is denied.