[No. 61364-8.   En Banc.   October 26, 1995.]

JOHN SERVAIS, *Petitioner*, v. PORT OF BELLINGHAM, *Respondent*.

*Pemberton & Hoogestraat, P.S.*, by *Joseph T. Pemberton, Jr.*, for petitioner.

*Chmelik & Johnson*, by *Frank J. Chmelik* and *Richard A. Davis III*, for respondent.

*Michael J. Killeen* and *Rosemary Reeve* on behalf of Allied Daily Newspapers, amicus curiae.

*Peter S. DiJulio* and *Grover E. Cleveland* on behalf of Washington Public Ports Association, amicus curiae.

*Christine O. Gregoire, Attorney General*, and *Thomas G. Holcomb, Jr., Assistant*, amicus curiae.

SMITH, J. — Petitioner John Servais seeks review of a decision by the Court of Appeals, Division One, affirming a judgment of the Whatcom County Superior Court which denied his action to compel public disclosure of a cash flow analysis prepared for the Port of Bellingham and which dismissed his complaint with prejudice, awarding Respondent Port of Bellingham statutory attorney fees and costs. We granted review. We affirm.

## QUESTION PRESENTED

The sole question presented in this case is whether the Court of Appeals, Division One, was correct in affirming a judgment of the Whatcom County Superior Court which dismissed Petitioner John Servais' action to compel the Port of Bellingham to disclose under RCW 42.17, the public disclosure act, certain "public records," a supplemental

cash flow analysis prepared for the Port by a national accounting and business consulting firm.

## Statement of Facts

In 1990, the Port of Bellingham (Port) commissioned Coopers & Lybrand, a national accounting and business consulting firm, to prepare a market feasibility study of Port properties at Fairhaven, Squalicum Harbor, Bellingham International Airport and Blaine Harbor.[1] The purpose of the study was to enable the Port to determine the potential and best uses of each of the properties, including leasing Port property for development, and to possibly design a comprehensive development strategy for all the property involved.[2] On May 7 and June 18, 1991, the Port held its regularly scheduled commission meetings and publicly disclosed the results of the market feasibility study.[3]

After considering the market feasibility study, the Port requested Coopers & Lybrand, a national business and accounting firm, to prepare a cash flow analysis of recommended uses for Squalicum Harbor, Bellingham International Airport and Blaine Harbor. No cash flow analysis of recommended uses for Fairhaven was requested.[4] The second study was prepared by Coopers & Lybrand "for use by the Port of Bellingham in negotiations with prospective joint-venture partners, equity partners and operators with whom the Port of Bellingham will deal directly and should not be used for any other purpose."[5] The study was not disclosed to the public. That study is at issue in this case.

On September 24, 1991, Petitioner Servais filed a public disclosure request with the Port for inspection of the

---

[1]Clerk's Papers at 70, 76, and 81.

[2]Clerk's Papers at 70-71, 76.

[3]Clerk's Papers at 91-95.

[4]Clerk's Papers at 77.

[5]Supp. Clerk's Papers at 5 (document was sealed and marked "confidential").

Coopers & Lybrand cash flow analysis.[6] The Port did not respond to the request until November 4, 1991.[7] On February 7, 1992, Petitioner Servais, acting pro se, and Frank J. Chmelik, counsel for the Port of Bellingham, appeared in the Whatcom County Superior Court before the Honorable Michael F. Moynihan.[8] Petitioner Servais was seeking to compel the Port to disclose certain records claimed by the Port to be exempt from public disclosure.[9]

■ The Port does not question whether the purported "complaint" in this case conforms to the requirements of CR 10. The document, in the form of a memorandum to the Whatcom County Superior Court from John Servais "Re: Port of Bellingham withholding of public records from public inspection,"[10] is clearly deficient under the rule. However, the Port filed an "Answer to Plaintiff's Complaint for Release of Public Records" on February 6, 1992, asking for "dismissal of Plaintiff's *complaint* with prejudice."[11] The parties proceeded to a hearing on February 7, 1992, at which counsel for the Port stated:

> This is a request for review under 42.17 for a decision by the Court to withhold some records claimed exempt under 42.27.330. Mr. Servais filed this *petition or complaint*—I don't know what he entitled the complaint for—yesterday, because he was asking for some penalties, for $25 a day. We responded and got this special setting. . . .[12]

Petitioner Servais appeared at that hearing pro se.

On February 19, 1992, Petitioner appeared with counsel in superior court on his "motion to perfect the record." On March 5, 1992, his counsel filed an "Amended Complaint,"

---

[6]Verbatim Report of Proceedings (February 7, 1992) at 2.

[7]Verbatim Report of Proceedings (February 7, 1992) at 2.

[8]Verbatim Report of Proceedings (February 7, 1992) at 1.

[9]Verbatim Report of Proceedings (February 7, 1992) at 2-9.

[10]Clerk's Papers at 149.

[11](Italics ours.) Clerk's Papers at 144.

[12](Italics ours.) Verbatim Report of Proceedings at 1.

which incorporated "the entirety of the Complaint on file" and which asked the court for the following relief:[13]

1. That the Court order full disclosure by the Defendant, and grant the opportunity to inspect and copy the entire documentation of any sort received at any time by Defendant from the accounting firm of Coopers & Lybrand;

2. That Court enter judgment against Defendants in favor of Plaintiff for all Plaintiff's costs and attorney fees incurred herein;

3. That the Court order Defendant to pay a $25.00 per day penalty/damages, commencing September 30, 1991;

4. For such other relief as the Court deems just.

On June 19, 1992,[14] Judge Moynihan conducted an *in camera* review of the requested documents and ruled they were exempt from public disclosure under RCW 42.17-.310(1)(h). In the judgment and order dismissing the complaint, the court entered "findings of fact" which included the following:

1. [That] [t]he data withheld by the Port of Bellingham is financial data.

2. That the Port of Bellingham commissioned this data in order to provide for a public gain; (a) namely, to negotiate from a position of a well-informed landlord; and (b) to have the necessary information to value the expected long-term leases.

3. That any hotel development company would keep this type of information private and confidential so that it could deal from its own position of strength.

. . . .

6. That the financial data is valuable formula and/or research data as defined in RCW 42.17.310(1)(h) in that it was obtained by the Port specifically to assist the Port in negotiating leases of its property.

---

[13]Clerk's Papers at 140.

[14]Petitioner Servais was represented by counsel at this hearing.

7. That the release of the financial data would produce a private gain and a public loss.

. . . .

The trial court dismissed Petitioner's complaint with prejudice and awarded Respondent statutory attorney fees and costs.[15]

On December 27, 1993, the Court of Appeals, Division One, Acting Chief Judge Rosselle Pekelis writing, affirmed the decision of the trial court. On June 8, 1994, this court granted Petitioner Servais' petition for review.

## DISCUSSION

### Washington Public Disclosure Act

Under the Washington public disclosure act, "[j]udicial review of all agency actions taken or challenged . . . shall be de novo."[16] The act was passed in 1972 by Washington voters as Initiative 276, now codified in RCW 42.17.[17] The public disclosure act mandates "disclosure in four areas of government, namely: campaign financing; lobbyist reporting; reporting of elected officials' financial affairs; and public records."[18] We are concerned only with disclosure of public records in this case.

"The Washington public disclosure act is a strongly worded mandate for broad disclosure of public records."[19] The declaration of policy includes the statement:

That, mindful of the right of individuals to privacy and *of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and*

---

[15]Clerk's Papers at 6.

[16]RCW 42.17.340(3); *see also Tacoma v. Tacoma News, Inc.*, 65 Wn. App. 140, 143, 827 P.2d 1094, *review denied*, 119 Wn.2d 1020 (1992).

[17]Initiative 276, Laws of 1973, ch. 1.

[18]*In re Rosier*, 105 Wn.2d 606, 618, 717 P.2d 1353 (1986) (Andersen, J., dissenting in part, concurring in part).

[19]*Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978).

*necessary precondition to the sound governance of a free society.*[20]

The declaration of policy also requires that provisions of the act be "liberally construed to promote complete disclosure of all information . . . and full access to public records . . . to assure continuing public confidence of fairness of . . . governmental processes, and . . . to assure that the public interest will be fully protected. . . ."[21]

In *Spokane Police Guild v. Liquor Control Bd.*,[22] Justice Andersen, writing for the majority, stated:

> Achieving an informed citizenry is a goal sometimes counterpoised against other important societal aims. Indeed, as the act recognizes, society's interest in an open government can conflict with its interest in protecting personal privacy rights and with the public need for preserving the confidentiality of criminal investigatory matters, among other concerns. Though tensions among these competing interests are characteristic of a democratic society, their resolution lies in providing a workable formula which encompasses, balances and appropriately protects all interests, while placing emphasis on responsible disclosure. *It is this task of accommodating opposing concerns, with disclosure as the primary objective, that the state freedom of information act seeks to accomplish.*

(Italics ours.)

The public disclosure act requires *public agencies* to make all *"public records"* available for *public inspection*.[23] The act requires agencies to "adopt and enforce reasonable rules and regulations . . . to provide full public access to public records . . ."[24] and permits agencies to "impose . . . reasonable charge[s] for providing copies of

---

[20](Italics ours.) RCW 42.17.010(11).

[21]RCW 42.17.010(11).

[22]112 Wn.2d 30, 33-34, 769 P.2d 283 (1989).

[23](Italics ours.) RCW 42.17.260(1).

[24]RCW 42.17.290.

public records . . . ."[25] Agencies must make prompt response to requests for public records.[26] In addition, if the request for public disclosure is denied, "[d]enials of requests must be accompanied by a written statement of the specific reasons" for denial.[27]

The Port of Bellingham is subject to the public disclosure act. The Port is a public agency[28] created under RCW 53.04.010 for "acquisition, construction, maintenance, operation, development and regulation within the district of harbor improvements . . . ."[29] The documents requested in this case are public records under the act because they are writings relating to conduct and performance of governmental or proprietary functions of the Port of Bellingham, and they were prepared for and retained by the Port. RCW 42.17.020(27) defines "public record":

> "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

██ "Once documents are determined to be within the scope of the act, disclosure is required unless a specific statutory exemption is applicable."[30] RCW 42.17.310 provides exemptions from public inspection and copying for certain personal information and other specified information and records. However, since "the act favors disclosure, the statutory exemptions must be construed narrowly. . . . The agency claiming an exemption bears

[25]RCW 42.17.300.

[26]RCW 42.17.320.

[27]RCW 42.17.320.

[28]RCW 42.17.020(1).

[29]Under RCW 53.08.080, the Port, as a public agency, may also lease property.

[30]*Dawson v. Daly*, 120 Wn.2d 782, 789, 845 P.2d 995 (1993).

the burden of proving that the documents requested are within the scope of the claimed exemption. . . ."[31]

The exemptions listed under RCW 42.17.310(1) are not absolute. If a document falls under an exemption listed in RCW 42.17.310(1)(a)-(dd), RCW 42.17.310(2) and (3) permit a court to order disclosure if the exempt portion can "be deleted from the specific records sought" so there would be no violation of "personal privacy or vital governmental interests"[32] or if disclosure of the document would not invade a person's right of privacy or interfere with a vital governmental function.[33]

The Port contends the results of the second Coopers & Lybrand study, the cash flow analysis, are not subject to disclosure under RCW 42.17.310(1)(h), which exempts:

> Valuable formulae, designs, drawings, and *research data* obtained by any agency within five years of the request for disclosure when disclosure would produce *private gain and public loss.*

(Italics ours.)

■ "The clear purpose of the exemption is to prevent private persons from using the Act to appropriate potentially valuable intellectual property for private gain."[34] Our recent decision in *Progressive Animal Welfare Soc'y v. University of Wash.*,[35] provides some guidance in determining what documents may be exempt from disclosure as "research data" under RCW 42.17.310(1)(h). In that case we affirmed the trial court's decision, after *in camera* review, to disclose appropriate portions of a grant proposal not otherwise disclosable under the public disclosure act, RCW 42.17.

---

[31]*Id.* at 789; *see also* RCW 42.17.340(1).

[32]RCW 42.17.310(2).

[33]RCW 42.17.310(3).

[34]*Progressive Animal Welfare Soc'y v. University of Wash.*, 125 Wn.2d 243, 255, 884 P.2d 592 (1994).

[35]*Progressive Animal Welfare Soc'y*, 125 Wn.2d at 255.

While that opinion did not specifically define "research data," it nevertheless did make a comment which is relevant to this case:

> [I]n science, data and hypotheses are inextricably intertwined. Valuable "research data" include not only raw data but also the guiding hypotheses that structure the data . . . . If the data or hypotheses . . . were prematurely released, the disclosure would produce both the private gain constituted by potential intellectual property piracy and the public loss of patent or other rights. . . .[36]

██ "The fundamental objective of statutory construction is to ascertain and carry out the intent of the Legislature. . . ."[37] This court has accepted "various tools of statutory construction which may include consideration of the legislative history and administrative interpretation of the statute"[38] or "resort to a dictionary to give meaning to . . . term[s]."[39]

Petitioner Servais contends the term "research data" should be narrowly construed to mean only scientific facts. He cites a law review article which states that the language of RCW 42.17.310(1)(h) "clearly applies to scientific and technical information . . . ."[40] That statement is correct, but does not even imply that the statute applies *only* to scientific and technical information.

The Court of Appeals, Division One, rejected Petitioner Servais' interpretation and concluded the term "research data," as used in RCW 42.17.310(1)(h), was intended to be defined generally. Based upon dictionary definitions, the Court of Appeals defined "research data" as *organized information or material derived from a careful or diligent*

---

[36]*Progressive Animal Welfare Soc'y*, 125 Wn.2d at 255.

[37]*Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991).

[38]*Rozner*, 116 Wn.2d at 347.

[39]*Dawson*, 120 Wn.2d at 791.

[40]Michael C. McClintock, et al., *Washington's New Public Records Disclosure Act: Freedom of Information in Municipal Labor Law*, 11 GONZ. L. REV. 13, 47 (1975).

*search which serves as a basis for discussion or decision.*"
This definition is overly broad and is not necessary for the
conclusion reached by the Court of Appeals.[41]

The Court of Appeals also concluded that the requested
documents were "financial data" within its definition of
"research data," which, if disclosed, would result in
private gain and public loss.[42] The court stated:

> *First*, the Coopers & Lybrand cash flow analysis is organized
> information consisting of projected cash flows, occupancy
> rates, room rates, and revenue figures for potential hotel
> developments. *Second*, the projected figures are based on a
> careful and diligent search of the hotel industry, market
> conditions, and the nature of the Port's property. *Third*, the
> information is meant to be a basis for the Port's negotiations
> or discussions with potential lessees.[43]

A review of the words "research" and "data" in the
*Oxford English Dictionary*,[44] the *American Heritage Dictionary
of the English Language*,[45] the *Random House Dictionary
of the English Language*,[46] *Webster's Third New
International Dictionary*[47] and BLACK'S LAW DICTIONARY[48]
results in definitions of both words which do not limit
them to scientific data. Petitioner Servais is in error in as-
serting that the term "research data" should be limited to
scientific facts. "Valuable formulae," "designs," "draw-
ings" and "research data" can include information that is
not necessarily scientific in nature.

[41]*Servais v. Port of Bellingham*, 72 Wn. App. 183, 190, 864 P.2d 4 (1993).

[42]*Servais*, 72 Wn. App. at 191.

[43](Italics ours.) *Servais v. Port of Bellingham*, 72 Wn. App. at 191.

[44]*The Oxford English Dictionary* 43, 507 (1961); *A Supplement to the Oxford
English Dictionary* 737, 1204-05 (1961).

[45]*The American Heritage Dictionary of the English Language* 475-76, 1534
(3d ed. 1992)

[46]*The Random House Dictionary of the English Language* 508-09, 1637 (2d
ed. 1987).

[47]*Webster's Third New International Dictionary* 577, 1930 (1986).

[48]BLACK'S LAW DICTIONARY 395 (6th ed. 1990).

The definition of the term "research data" in the public disclosure act lies somewhere between the narrow and restrictive definition urged by Petitioner Servais and the broad and inclusive definition adopted by the Court of Appeals. The Court of Appeals observed that "[t]he statute itself contains no scientific qualification."[49] With this observation we agree.

This court must interpret the statutory language before us in this case in consonance with the public policy announced by the Legislature when it enacted the public disclosure act. Thus, a carefully tailored definition of "research data" is essential to determination of the essential question whether disclosure of the document or public record would cause *private gain and public loss*.[50]

We define "research data" as "a body of facts and information collected for a specific purpose and derived from close, careful study, or from scholarly or scientific investigation or inquiry."

The trial court concluded, and the Court of Appeals agreed, that "private developers would benefit by insight into the Port's negotiating position if the financial data were disclosed, thereby resulting in a loss to the public." The term "research data" must then be limited by the question whether private gain and public loss would result if the requested documents were disclosed. This is consistent with the language of *Progressive Animal Welfare Soc'y* quoted earlier in this opinion.[51]

■ The Port has responsibility under RCW 53.06 to "promote and encourage port development along sound economic lines,"[52] to "promote and encourage the develop-

---

[49]*Servais v. Port of Bellingham*, 72 Wn. App. at 190.

[50]RCW 42.17.310(1)(h).

[51]*Progressive Animal Welfare Soc'y*, 125 Wn.2d at 255.

[52]RCW 53.06.030(4).

ment of transportation, commerce and industry,"[53] and to "initiate and carry on the necessary studies, investigations and surveys required for the proper development and improvement of the commerce and business generally common to all port districts . . . ."[54] The cash flow analysis was prepared to provide the Port with data it could use in negotiations with developers. That portion of the study should remain exempt under RCW 42.17.310(1)(h) to permit the Port to conduct negotiations in the best interests of the public and to perform its statutory duties.

The Port publicly disclosed results of the entire market feasibility study. It withheld from disclosure the subsequent Coopers & Lybrand cash flow analysis. Under the statute, the Port properly disclosed only that portion of the study which could be separated from the portion specifically exempted from disclosure as "research data."[55]

Petitioner Servais further contends the definition of "research data" by the Court of Appeals is contrary to the public record indexing statute, RCW 42.17.260, subsection (3) of which provides:

> Each local agency shall maintain and make available for public inspection and copying a current index providing identifying information as to the following records issued, adopted, or promulgated after January 1, 1973.

Records subject to the indexing statute include final opinions;[56] statements of policy and interpretations of policy, statute and the Constitution which have been adopted by the agency;[57] administrative staff manuals and instructions;[58] planning policies and goals;[59] factual staff reports and studies, factual consultant's reports and stud-

---

[53]RCW 53.06.030(5).

[54]RCW 53.06.030(1).

[55]RCW 42.17.310(1)(h).

[56]RCW 42.17.260(3)(a).

[57]RCW 42.17.260(3)(b).

[58]RCW 42.17.260(3)(c).

[59]RCW 42.17.260(3)(d).

ies, scientific reports and studies, and any other factual information derived from tests, studies, reports, or surveys;[60] and correspondence.[61]

Petitioner Servais argues that the Port did not comply with the indexing statute because it did not index the requested documents, and did not provide the public with identifying information concerning the documents. However, Petitioner overlooks RCW 42.17.260(4), which states that "[a] local agency need not maintain such an index, if to do so would be unduly burdensome . . . ." Reading RCW 42.17.260(4) with RCW 42.17.310(1)(h) leads to the conclusion that disclosure of the information sought by Petitioner would result in private gain and public loss and to agreement with the Port that maintaining a public index of the vast array of Port documents would be unduly burdensome.[62] It is not necessary to go beyond this point on the indexing issue.

■ At the same time, though, we do not agree with the Court of Appeals that the Port should decide what records should be exempt. "[L]eaving interpretation of the act to those at whom it was aimed would be the most direct course to its devitalization."[63] Under the public disclosure act, there is "a positive duty to disclose public records unless they fall within the specific exemptions."[64] It is the court, and not the agency, which determines whether re-

---

[60]RCW 42.17.260(3)(e).

[61]RCW 42.17.260(3)(f).

[62]On March 17, 1992, the Commissioners of the Port of Bellingham adopted Resolution 969, stating in part:

"WHEREAS, the commission finds that it would be *unduly burdensome* to index all the many varied Port records given the wide range of Port activities, the limited staffing and the fact that the Port of Bellingham does not render the types of opinions contained in RCW 42.17.260; and

"WHEREAS, the creation of such an index would interfere with the Port operations in that it would take an inordinate amount of staff time to develop and to maintain;" (Italics ours.) Clerk's Papers at 90.

[63]*Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 131, 580 P.2d 246 (1978).

[64]*Id.* at 130.

cords are exempt.[65] That determination was made by the superior court in this case.

### Freedom of Information Act

Our public disclosure act closely parallels the federal Freedom of Information Act.[66] In fact, the public records portion of the state act[67] has been "commonly referred to as the 'state freedom of information act'."[68]

■ Petitioner Servais urges this court to consider the federal Freedom of Information Act and the specific statutory exemptions provided under the state public disclosure act. Indeed the "state [public disclosure] act closely parallels the federal Freedom of Information Act (FOIA), . . . and thus judicial interpretations of that act are particularly helpful in construing our own."[69] However, the exemptions to disclosure in the state public disclosure act are significantly different from those in the federal Freedom of Information Act.

The state public disclosure act, RCW 42.17.310(1)(h), provides a specific exemption for "valuable formulae, designs, drawings and research data." The federal Freedom of Information Act contains no exemption for "research data." The nearest comparable exemption under the FOIA is 5 U.S.C. § 552(b)(4) which exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential." Because of this difference, federal cases construing the exemption provision of the FOIA are thus of little value in this case.

### CONCLUSION

We affirm the decision of the Court of Appeals, Division

---

[65]*Id.*

[66]5 U.S.C. § 552.

[67]RCW 42.17.250-.348.

[68]*In re Rosier*, 105 Wn.2d 606, 619, 717 P.2d 1353 (1986) (Andersen, J. dissenting in part, concurring in part).

[69]*Hearst Corp.*, 90 Wn.2d at 128.

One, which affirmed the decision of the Whatcom County Superior Court denying the motion by Petitioner John Servais to compel the Port of Bellingham to disclose under the Washington public disclosure act a supplemental cash flow analysis prepared for the Port by Coopers & Lybrand, a national business and accounting firm. We do not reach the indexing issue.

DURHAM, C.J., DOLLIVER, GUY, JOHNSON, and MADSEN, JJ., and BRACHTENBACH and UTTER, JJ. Pro Tem., concur.

ANDERSEN, J. Pro Tem., concurs in the result.